# CHARLESTON.

J. H. STALEY *v.* J. W. RIFE, *et al.*

(No. 6740)

Submitted November 18, 1930.   Decided November 25, 1930.

*Marcum & Marcum* and *W. T. Lovins,* for plaintiff in error.
*Vinson, Thompson, Meek & Scherr,* for defendants in error.

WOODS, JUDGE:

This is an action to recover damages for an alleged malicious prosecution.   This writ is prosecuted from the action of the trial court in striking plaintiff's evidence and directing a verdict for the defendants.

It appears that three separate indictments had been returned against the plaintiff in the latter half of 1927 charging him with the embezzlement of certain moneys and effects of the Kenova Drug Company.   Each was returned on the informa-

tion of J. W. Rife, one of the stockholders. The first two were dismissed on demurrer, and the third, at a subsequent term, was nollied by the prosecuting attorney. Plaintiff, the three defendants, and a fifth party (an attorney holding one qualifying share) organized the Kenova Drug Company in 1923. Plaintiff, who had been employed for some months in another drug store in the same city, was elected secretary-treasurer of the new corporation, and placed in active management of the concern. He continued to act in this capacity until March, 1927, when he was relieved of his duties by corporate action. Shortly thereafter the stock and fixtures were sold under the bulk sales law to a Huntington concern. All money paid in for stock in the corporation ($11,100.00) was a total loss. In addition there remained outstanding a $2,666.66 indebtedness on two $2,000.00 notes of the corporation, which were endorsed by the plaintiff and the three defendants. During his term as manager (40 months) plaintiff bought a drug store in Westmoreland (six miles distant) for a consideration of $5,000.00 and placed his brother in charge. During 2½ years' operation plaintiff paid off the $2,000.00 obligation, which he had assumed, to a wholesale company, and $500.00 on the $3,000.00 loan secured on his note. This business was sold to the brother for a consideration of $1,000.00 and the assumption of the then outstanding indebtedness. $100.00 of the consideration was actually paid. Orders in case lots were bought by Kenova Drug Company and split with the Westmoreland store. Accounts between the two stores were kept on small note books, no entries being made on the regular ledger of the corporation. On the other hand, the Kenova Drug Company during plaintiff's management did a $110,-000.00 business, $25,000.00 of which represented gross profits. This latter amount plaintiff says was eaten up by salaries, rents, taxes and the like. The testimony in this regard is at best very general and fragmentary. Quite a considerable sum seems to remain unaccounted for. He states that at a hold-over meeting of the board of directors three months before he was discharged, a question arose about the salary he was to receive; that two of defendants, Rife and Garrett, placed it at $150.00 and $175.00, respectively, but the third,

plaintiff's uncle, was not positive. Plaintiff states that the arrangement was to pay him $200.00, and that he paid himself on that basis. A part of the salary is still claimed to be due. Plaintiff also pointed out an entry which he had made in the minutes of the first meeting of the board of directors that "he shall receive $200.00 a month." He states that while he interlined "he shall receive" after the president had signed the minutes, that the figures were not altered.

While plaintiff was in court several times and gave bond, yet at no time did he plead to the indictment. He makes no specific denial of the offense charged in the indictment in the present case. It appears from the testimony of Dr. Rife, who was called upon to produce the ledger, that the book was turned over to the party taking over the stock of goods. When the doctor went to get the ledger, just prior to the term at which the hearing on the third indictment was to have been had, he found that the pages had been removed and misplaced. As before stated, this indictment was nollied.

Was such evidence sufficient to establish lack of probable cause? Though such allegation is a negative one in its form and character, it is nevertheless a material element of the action for malicious prosecution, and the burden is upon the plaintiff to prove affirmatively, by circumstances or otherwise, as he may be able, that the defendant had no reasonable or probable ground for instituting the original proceeding. *Fetty* v. *Huntington Loan Co.*, 70 W. Va. 688. "The action for malicious prosecution is not favored in law, and hence has been hedged about by limitations more stringent than those in the case of almost any other act causing damage to another, and the courts have allowed recovery only when the requirements limiting it have been fully complied with. The disfavor with which the action is looked upon is especially marked in cases where the suit is being brought for the institution of criminal proceedings against the plaintiff, as public policy favors the exposure of crime, which a recovery against a prosecutor obviously tends to discourage." 18 R. C. L. 11.

The criminal law must be enforced, and human agencies must be employed for the purpose, and the law wisely protects all persons who in good faith act on reasonable presumptions

of the guilt of the accused. Citizens must be left free to state in good faith to the grand jury the grounds for their belief that a crime has been committed, and a certain person is the offender. It is true they must have reasonable grounds for their belief and act in good faith. *Dunlap* v. *Railroad Co.,* 107 W. Va. 186. This is all the law requires. This action is strictly guarded. It is never encouraged except in plain cases. Were it otherwise, ill consequences would ensue to the public, for no one would willingly undertake to vindicate a breach of the public law, and to discharge a duty to society, with the prospect of an annoying suit for malicious prosecution staring him in the face. Nothing appears in this record how J. W. Rife appeared before the grand jury. The presumption is that he came before it in response to a summons duly served upon him or upon the command or advice of the prosecuting attorney. It was, however, in the usual orderly way. That the drug business was operated at a great loss is apparent.

The question of what constitutes embezzlement of funds is not a crime easy of definition by the layman. It is not an offense at common law, but is a creature of the statute. The drug company was incorporated. Any disbursement of funds contrary to authority might amount to an embezzlement. Upon the case made by the plaintiff, the trial court was called upon to determine whether or not plaintiff had established want of probable cause. As already stated, this is one of the essential grounds of the action, and the burden rests upon the plaintiff to prove it. The duty to decide such question is placed upon the court by the law, where the facts are not controverted, as here. *Vinall* v. *Core,* 18 W .Va. 1. This rule although undoubtedly anomalous in that it substitutes the judgment of the court for that of the jury as to the reasonableness of the defendant's conduct in the light of the admitted or established facts or beliefs, is nevertheless, except in a few jurisdictions, established by the overwhelming weight of authority. In its origin, the rule is probably traceable to the apprehension of the courts that if the question of probable cause were left to juries, they might not sufficiently safeguard the rights of defendant, and so discourage the performance of a public duty of laying informations against persons believed

to have committed offenses and hamper the administration of the criminal law. These practical considerations seem to have prevailed over the theoretical objections against invading the province of the jury and withdrawing from them what is essentially an inference of fact rather than of law; namely, whether defendant acted as a reasonably prudent man would have acted under the circumstances. Looking at the court's action in this light, we must accord to it the weight of a jury's action thereon. Can we say the decision is erroneous? Even should we doubt the correctness of that finding, yet under the very nature of the case and the testimony adduced, we cannot say that the trial court was wrong. However, had sufficient evidence been adduced to warrant the trial court in finding want of probable cause, we doubt very seriously whether the element of malice was shown on the part of the defendants. The absence of this element is fatal to a recovery. *McNair v. Erwin,* 84 W. Va. 250; *Bailey* v. *Gollehon,* 76 W. Va. 322.

*Affirmed.*