399 S.E.2d 464

**John David MORTON**

v.

**The CHESAPEAKE AND OHIO RAILWAY COMPANY, a Virginia Corporation, and B.L. Wheeler.**

**No. 19658.**

Supreme Court of Appeals of West Virginia.

Nov. 13, 1990.

---

The pertinent part of W.Va.Code, 49–6–2(b), is   set out in note 4, *supra*.

Marc E. Williams, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, for Chesapeake & Ohio Ry. Co., a Virginia Corp. and B.L. Wheeler.

Kevin Burgess, Hamilton & Mooney, Oak Hill, for John David Morton.

## PER CURIAM:

This case involves an action for malicious prosecution instituted by John David Morton against the Chesapeake and Ohio Railway Company (currently known as CSX) and its employee, B.L. Wheeler. After the Circuit Court of Fayette County directed a verdict in favor of Mr. Wheeler, the jury returned a verdict against the railway and awarded Mr. Morton $15,000 in damages. The railway appealed to this Court. We reverse the circuit court because after Mr. Wheeler was dismissed, the circuit court should have dismissed the railway because the evidence was not sufficient to support a verdict against the railway.

On November 17, 1981, M.L. Trout, the railway's superintendent of police, was notified that railroad communication lines near McKendree, West Virginia were not operating. Two railway employees, Don Pennington and Paul Adkins, went to the McKendree area and found that the communication wire was missing. They reported to Mr. Trout that a green 1973 Pontiac, License Number 5N–7276, was parked alongside the track where the wire was missing and that one of the two men with the car had a green substance on his hands. Railroad communication wire, a non-insulated copper wire, can oxidate to leave a green residue. A car with the reported license number was found to belong to David Morton. Mr. Trout testified that in a telephone conversation on November 17, 1981, David Morton admitted that he and his brother John were by the river but denied stealing the wire.[1] David Morton acknowledged that the car was his but maintained that he and "two other fellers [sic]" were parked by "an old trash dump drinking." David Morton denied mentioning his brother, John, and testified that "[t]here was never no names given [sic]."

Mr. Trout contacted Mr. Wheeler, the railway's special agent, who then confirmed with Mr. Pennington and Mr. Adkins that they saw two men "right where the wire was cut; that the wire was hanging down, and their vehicle was broken down." On December 7, 1981, based on this information, Mr. Wheeler sought arrest warrants for David Morton and his brother, John Morton. The warrants were issued by Magistrate Love who determined that probable cause existed based on the information that David and John Morton were seen where the wire was cut with a green substance on at least one of them.

Mr. Wheeler testified that shortly after his arrest David Morton said that John and he had been drinking by the river. David Morton denies making that statement and said that Mr. Wheeler was looking for his father, who is also named John, and not for his brother.

Before the preliminary hearing, scheduled for January 12, 1982, Mr. Wheeler spoke again with Mr. Pennington and Mr. Adkins who said that their earlier statement was a mistake and the car had been "approximately a mile from the area where the wire was cut." Because of change in information, Mr. Wheeler requested that charges against David and John Morton be dismissed. On January 12, 1982, the charges were dismissed without prejudice.

On November 18, 1982, John Morton filed suit against the railway and Mr. Wheeler alleging false arrest and malicious prosecution. During the trial John Morton

---

1. Mr. Trout testified that he could not remember how he obtained David Morton's telephone number but thought he had spoken with Mr. Morton's mother who gave him the telephone number.

dropped his false arrest claim and at the conclusion of John Morton's case, the circuit court directed a verdict in favor of Mr. Wheeler. After the railway presented testimony from Mr. Trout, the case against the railway went to the jury, who returned a verdict against the railway and awarded John Morton $15,000. The railway appealed to this Court alleging that a verdict should have also been directed in its favor.

## I

█ The elements for malicious prosecution were specified in Syllabus Point 3, *Truman v. Fidelity & Casualty Co. of New York*, 146 W.Va. 707, 123 S.E.2d 59 (1961) as follows:

> "In an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he can not recover." *Radochio v. Katzen*, 92 W.Va. 340, Pt. 1 Syl. [114 S.E. 746].

*See Preiser v. MacQueen*, 177 W.Va. 273, 352 S.E.2d 22, 24 (1985); *Tritchler v. West Virginia Newspaper Publishing Co., Inc.*, 156 W.Va. 335, 340, 193 S.E.2d 146, 149 (1972).

█ In a case for malicious prosecution the plaintiff must demonstrate the elements by a preponderance of evidence. In Syllabus Point 2, *Hunter v. Beckley Newspapers Corp.*, 129 W.Va. 302, 40 S.E.2d 332 (1946), we stated:

> To sustain an action of trespass on the case for malicious prosecution of either a civil suit, action or proceeding, or a criminal charge, there must be a showing, from a preponderance of the evidence, of both malice and want of probable cause in the prosecution complained of. Absence of a showing of either is fatal to the plaintiff's claim for recovery.

Syllabus Point 1, *Truman supra; Thomas v. Beckley Music and Electric Co.*, 146 W.Va. 764, 771, 123 S.E.2d 73, 79 (1961).

This high level of proof is required because:

> "The public policy favors prosecution for crimes and requires the protection of a person who in good faith and upon reasonable grounds institutes proceedings upon a criminal charge. The legal presumption is that every prosecution for crime is founded upon probable cause and is instituted for the purpose of justice." *McNair v. Erwin*, 84 W.Va. 250 [99 S.E. 454 (1919)]. *Staley v. Rife*, 109 W.Va. 701, Pt. 1 Syl. [156 S.E. 113 (1930)].

Syllabus Point 2, *Truman supra*.

█ In civil malicious prosecution actions, the issues of malice and probable cause become questions of law for the court where there is no conflict of evidence or where there is only one inference to be drawn by reasonable minds. *Truman, Id.* 146 W.Va. at 723–24, 123 S.E.2d at 70. Although malice may be inferred by a lack of probable cause, the question of the existence of probable cause depends on the defendant's honest belief of guilt on reasonable grounds. *Id.* In Syllabus Point 5, *Truman, supra*, 109 W.Va. at 707, 123 S.E.2d at 59, we stated:

> Probable cause for instituting a prosecution is such a state of facts and circumstances known to the prosecutor personally or by information from others as would in the judgment of the court lead a man of ordinary caution, acting conscientiously, in the light of such facts and circumstances, to believe that the person charged is guilty. *Radochio v. Katzen*, 92 W.Va. 340, Pt. 2 Syl. [114 S.E. 746].

█ In the present case, the record indicates that at the time Mr. Wheeler sought the arrest warrants he had two witnesses who claimed to have seen two men and a car next to where the communication wire was missing and one of the men had some green substance on his hands. Mr. Wheeler also knew that the car belonged to David Morton and he had been told by Mr. Trout that David Morton said he was with his brother John. This information was presented to Magistrate Love who found probable cause and issued the arrest war-

rants. In light of the facts of the case, we agree with the circuit court that as a matter of law, John Morton failed to show, by a preponderance of evidence, that Mr. Wheeler sought a warrant without probable cause.

## II

■ We have long acknowledged that a "corporation may be held liable to respond in damages in an action for malicious prosecution. [Citations omitted]." *Truman, supra,* 109 W.Va. at 721, 123 S.E.2d at 68. Because a corporation does not exist as a living entity, the actions or omissions of its employees or agents can form the basis for a corporation's liability under the doctrine of respondeat superior.[2] *Harless v. First National Bank in Fairmont,* 169 W.Va. 673, 684, 289 S.E.2d 692, 699 (1982).

■ The sole basis of John Morton's theory for a cause of action against the railway was Mr. Wheeler's wrongful acts. John Morton presented no evidence that any other railway employee was responsible for his prosecution. The record indicates that Mr. Wheeler alone presented evidence before the magistrate. Mr. Adkins and Mr. Pennington did not testify and Mr. Trout's involvement with the case ended after assigning the investigation to Mr. Wheeler. Even after Mr. Wheeler's dismissal, John Morton continued to allege that Mr. Wheeler's actions formed the basis for recovery against the railway. No other theory of recovery was given to the jury. John Morton's closing statement emphasized Mr. Wheeler's actions.[3] Even the jury instruction emphasized Mr. Wheeler's actions.[4]

■ In *Willigerod v. Sharafabadi,* 151 W.Va. 995, 158 S.E.2d 175 (1967), we considered a factually similar case, in which Ms. Willigerod sued a hospital and its employee doctor for malpractice. The alleged liability of the hospital was predicated solely on the alleged negligence of the employee doctor under the doctrine of respondeat superior. We held that because the theory of recovery against the hospital was predicated on the alleged negligence of the employee doctor, the dismissal of the employee doctor required the dismissal of the hospital. The Syllabus of *Willigerod, Id.,* stated:

> Where a master and a servant are sued jointly in an action for recovery of damages resulting from personal injuries if the action is based solely on the alleged tortious conduct of the servant, and he is, by a final judgment, acquitted of guilt of the tortious conduct alleged as a basis for the action, there can be no recovery thereafter against the master on the basis of such alleged cause of action.

*See,* Syllabus Point 8, *State ex rel. Bumgarner v. Sims,* 139 W.Va. 92, 79 S.E.2d 277 (1953).

---

2. *See Humphrey v. Virginian Railway Co.,* 132 W.Va. 250, 54 S.E.2d 204 (1948), discussing corporate liability for a violation of a separate nondelegable duty imposed by statute.

3. John Morton's closing statement included the following summary:

   I'll tell you what happened: Mr. Wheeler didn't nail their story down to start with. He went off half-cocked, got the warrant, and then he starts getting ready to go to court and he starts inquiring of his witnesses better, and then all of a sudden his crystal-clear case evaporates. But that's not John Morton's fault; that's Mr. Wheeler's fault, and its the railroad's fault for the way they do business.

4. The following instructions, which were John Morton's second and third proposed instructions, were given by the circuit court:

   The Court instructs the jury that in order for the plaintiff [John Morton] to recover they must be satisfied from the evidence that the defendant Wheeler sought and obtained a warrant under which the plaintiff was arrested without probable cause and with malice. But if the jury believes from the evidence that at the time of the obtaining of the warrant the defendant Wheeler had no probable cause to believe the plaintiff was guilty of the crime alleged, then you may infer malice from his action. And if you then believe that such inference is reasonable from all the evidence, you may find the plaintiff—you may find for the plaintiff.

   The Court instructs the jury that probable cause is a state of facts actually existing and known to the defendant Wheeler personally, or by information derived from others, which would justify prosecution; that is, such information as would lead a reasonable man of ordinary caution acting conscientiously on these facts to believe the plaintiff was guilty.

In the present case, the alleged liability of the railway was based solely on the conduct of Mr. Wheeler and after the circuit court dismissed Mr. Wheeler, the evidence was not sufficient to support a verdict against the railway. We find that the circuit court should have directed a verdict in favor of the railway.

For the above stated reasons the judgment of the Circuit Court of Fayette County is reversed.

Reversed.