412 S.E.2d 770

**Kenneth POTE Plaintiff Below, Appellee,**

**v.**

**Richard JARRELL and Hollis Jarrell, Defendants Below, Appellants.**

**INTERSTATE DRILLING, INC., Plaintiff Below, Appellee,**

**v.**

**Richard JARRELL and Hollis JARRELL, Defendants Below, Appellants.**

**No. 19945.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 1, 1991.

Decided Dec. 17, 1991.

James C. West, Jr., West & Jones, Clarksburg, for appellants.

John Lewis Marks, Jr., Clarksburg, for appellees.

PER CURIAM:

The appellants, Richard Jarrell and Hollis Jarrell, appeal from a jury verdict entered in the Circuit Court of Lewis County, awarding damages to the appellee, Kenneth Pote, and to the other appellee, Interstate Drilling, Inc. Appellee Pote filed a civil action against the appellants primarily on the theories of malicious prosecution and abuse of process, which was later consolidated with a related case filed against the appellants by appellee, Interstate Drilling. The appellants' principal argument on appeal is that the trial court erred in denying their motions for a directed verdict on the grounds that they relied on the advice of counsel in initiating criminal charges against appellee Pote and that they did not willfully or maliciously misuse lawfully issued process. This Court is of the opinion that there is no reversible error, and accordingly, the judgment of the circuit court is affirmed.

I

Appellee Pote filed a civil action against appellants Richard and Hollis Jarrell based on the theories of malicious prosecution, abuse of process, intentional infliction of emotional distress, extortion, defamation of character, negligent failure to withdraw the warrant and false arrest. The incident which ultimately gave rise to Pote's causes of action occurred in October of 1987. The following facts relating to that incident were stated by the parties in their briefs. Because of the nature of this case, it is necessary to recite the facts at some length.

Pote, in his capacity as manager of Interstate Drilling, Inc.,[1] arranged to have the appellants, Richard and Hollis Jarrell, who were partners in an independent contracting business known as Rick's Dozer Service, provide a TD-15 bulldozer on Interstate Drilling's site to rework a road to a well location and to assist in moving pipe and equipment to the well site. The appellants provided Pote with a bulldozer and a bulldozer operator, Doyle James.

Mr. James operated the bulldozer on the day of the incident for approximately three to four hours. Upon completing his work, Mr. James drove the bulldozer to the bottom of the hill near the well location. Mr. James testified that he set the brakes, lowered the blade, closed the panel covering the gauges, inserted a lock[2] and left for the day. Pote and some other workers, however, continued to work on the well in an effort to remove a "packer."

At approximately 5:30 p.m., the well had a sudden release of pressure which caused oil and water to surge to the top of the well rig and spill onto the ground. Pote and the other workers attempted to control the flow with shovels. When their attempts to control the flow were unsuccessful, two of the workers, John Clowser and Clay Arbo-

1. One of the appellants, Hollis Jarrell, was a stockholder and director of Interstate Drilling. He had also served as its manager for many years until he decided to retire and was replaced by Mr. Pote.

2. Mr. James testified that although he was certain he inserted the lock through the hasp in the panel, he could not recall whether the lock was locked.

gast, suggested to Pote that they go to the bottom of the hill to get the bulldozer and use it to dig a ditch to contain the flow. Mr. Arbogast assured Pote that he could operate the bulldozer. Pote, who asserted he was faced with an emergency situation, authorized Mr. Arbogast and Mr. Clowser to use the bulldozer. With the use of the bulldozer, they were successful in digging a ditch to contain the flow and in keeping it from going over the hill onto the landowner's property.

When Mr. James arrived at the well site a few days later, he noticed that the bulldozer had been moved. When Mr. James drove the bulldozer to the well site, Pote advised Mr. James that they had used the bulldozer to try to contain the oil spill. Pote told Mr. James that he would call Richard Jarrell to explain the incident to him.[3] When Mr. James later noticed some problems with the operation of the bulldozer and realized that Pote had not informed Richard Jarrell that he used the bulldozer, Mr. James elected to tell Richard Jarrell what he had learned.

Pote and Richard Jarrell eventually had a heated confrontation over Pote's use of the bulldozer without authorization. After their argument, however, Pote telephoned Richard Jarrell to apologize and assured him that Interstate Drilling would pay for any damage done to the bulldozer.

Richard Jarrell consulted with his attorney, Bonnie Kratovil, to determine his rights with regard to the damage done to the bulldozer. Ms. Kratovil told Richard Jarrell that there might be criminal ramifications and recommended that he consult with the prosecuting attorney.

Richard Jarrell followed the recommendation of his attorney and went to the office of the magistrate to inquire about a warrant for Pote's arrest. Upon hearing the facts involved in the incident, the magistrate informed Richard Jarrell that he believed it was a civil matter. He did not issue a warrant. Richard Jarrell then went to the office of the prosecuting attorney, Harold Bailey. Mr. Bailey assisted Richard Jarrell in drafting the language to be included in the complaint to be filed for the warrant but did not advise him as to whether criminal charges should be brought. Thereafter, Richard Jarrell returned to the magistrate's office and, based upon the information provided to him by Mr. Bailey, Richard Jarrell filed a complaint for a warrant charging the appellee with the offense of feloniously and willfully injuring and tampering with a vehicle in violation of *W.Va.Code*, 17A–8–7(b) [1989].[4]

Pote received an invoice from appellants Richard and Hollis Jarrell requesting payment in the sum of $3,560.21 for damages to the bulldozer and for lost time and income. Pote called Richard Jarrell to obtain documentation to support the invoice but spoke with Hollis Jarrell instead. Pote then met with Hollis Jarrell and advised him that he would only reimburse him for the actual damage to the bulldozer and not for the lost time and income. Pote gave Hollis Jarrell a check for $844.27. Hollis Jarrell advised Pote that if he did not pay the entire amount of the invoice, he would have him arrested. After later discussing the matter with the president of Interstate Drilling, Pote mailed the appellants a check covering the amount of lost income and time.

The magistrate sent Pote a summons to appear which was received by Pote the day after he mailed the check to the appellants. Pote did not appear and a warrant was then issued for his arrest. Pote was arrested, photographed and fingerprinted, and then released on his own recognizance.

---

**3.** Richard Jarrell had asserted that Mr. James told him that Pote directed Mr. James not to tell him about the incident. However, Mr. James testified that Pote never told him not to tell Richard Jarrell about the use of the bulldozer.

**4.** It appears that the code section pursuant to which Richard Jarrell intended to charge the appellant was *W.Va.Code*, 17A–8–6(b) [1981].

That section provides, essentially, that any person who shall willfully injure or damage any "special mobile equipment" in the amount of "two hundred dollars or more, shall be guilty of a felony." If the damage shall be "less than two hundred dollars, such person or persons shall be guilty of a misdemeanor."

Following a preliminary hearing, Pote was bound over to the grand jury. Pote's case was not presented to the grand jury at the next two terms of court, and he filed a motion to dismiss the warrant. At a hearing on that motion, the circuit court instructed the prosecuting attorney that the court would dismiss the warrant if he failed to present the case at the next term of the grand jury. The case was then presented to the grand jury and Pote was indicted. At trial, the circuit court directed a verdict of acquittal on the felony charge in favor of Pote and the case was submitted to the jury on the misdemeanor offense. Within minutes, the jury found that Pote was not guilty.

Pote filed a civil action against appellants Richard and Hollis Jarrell based on the theories of malicious prosecution, abuse of process, intentional infliction of emotional distress, extortion, defamation of character, negligent failure to withdraw the warrant, and false arrest, and to recover the costs he incurred in defending himself in the criminal proceedings. Pote sought $25,000 in compensatory damages, $50,000 in general damages and $50,000 in punitive damages. Interstate Drilling also filed an action against the appellants contending that certain payments made by Interstate Drilling to the appellants were based on false representations which were related to the criminal charges filed by the appellants against Pote. These cases were consolidated and a trial was held. At the conclusion, the jury returned a verdict in favor of Pote, awarding him compensatory damages in the amount of $12,000.00 and punitive damages in the amount of $35,000.00. The jury also awarded appellee Interstate Drilling damages in the sum of $2,000.00. This case is now before us on appeal of that judgment.

## II

The appellants contend that the circuit court erred in overruling their motions for directed verdict because Richard Jarrell relied upon the advice of his attorney, Ms. Kratovil, and the advice of the prosecuting attorney, Mr. Bailey, in drafting the complaint for a felony warrant against Pote. The appellants do not argue that actions for malicious prosecution and abuse of process do not exist but assert instead that, under the facts of this case, there is no legal basis upon which this case could have been submitted to the jury.

It is well established in West Virginia that a cause of action may lie for malicious prosecution or abuse of process. At the outset of our resolution of the issues before us, we shall distinguish between malicious prosecution and abuse of process.

We listed the elements which must be established in order to recover in an action for malicious prosecution in syllabus point 3 of *Truman v. Fidelity & Casualty Co. of New York*, 146 W.Va. 707, 123 S.E.2d 59 (1961):

'In an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he cannot recover.' *Radochio v. Katzen*, 92 W.Va. 340, Pt. 1, Syl. [114 S.E. 746].

Furthermore, the plaintiff has the burden of proving these elements by a preponderance of the evidence because there is a presumption that every prosecution for a crime is founded upon probable cause and is instituted for the purpose of justice. Syl. pt. 2, *Truman, supra; Morton v. Chesapeake and Ohio Railway Co.*, 184 W.Va. 64, 67, 399 S.E.2d 464, 467 (1990).

We explained a cause of action for abuse of process in syllabus point 2 of *Wayne County Bank v. Hodges*, 175 W.Va. 723, 338 S.E.2d 202 (1985):

'Generally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process.' *Preiser v. MacQueen*, [177 W.Va. 273, 279, 352 S.E.2d 22, 28 (1985) ].

*See also State v. Petrice*, 183 W.Va. 695, 701, 398 S.E.2d 521, 527 (1990).

■ It appears from the record before us that Pote presented sufficient evidence from which a jury could find that he established all of the elements of his causes of action. The evidence presented to the jury showed that the appellants procured a felony warrant against Pote and caused him to be prosecuted for willfully injuring and tampering with a motor vehicle in violation of *W.Va.Code*, 17A–8–6(b) [1981]. The evidence further revealed that the case against Pote was prosecuted to its termination, resulting in Pote's discharge. At the end of the state's case, the circuit court directed a verdict of acquittal on the felony charge and Pote was found not guilty by the jury on the misdemeanor offense. With respect to the issue of whether there was probable cause to instigate a criminal prosecution against Pote, there was no evidence presented to the jury indicating that Pote feloniously and willfully damaged the bulldozer. Furthermore, the jury heard testimony from the magistrate that the appellants were informed that this was a civil matter rather than a criminal matter. Moreover, the appellees introduced evidence to the jury attempting to show that the appellants misused the criminal process by initiating criminal proceedings against Pote for the sole purpose of obtaining payment for damages to the bulldozer.[5] Thus, we find that Pote established the elements enumerated in *Truman, supra,* and in *Wayne County Bank, supra,* and presented sufficient evidence from which the jury

could conclude that they proved those elements by a preponderance of the evidence.

■ However, as to their defense to appellee Pote's cause of action for malicious prosecution,[6] the appellants have asserted that they relied on the advice of their personal counsel, Ms. Kratovil, and the advice of the prosecuting attorney, Mr. Bailey, in making the complaint giving rise to the issuance of the felony warrant against Pote. We recognized in syllabus point 8 of *Truman v. Fidelity & Casualty Company of New York* that acting on the advice of counsel can be an absolute defense in an action for malicious prosecution:

'A suit, action or proceeding, prosecuted in good faith, and on advice of reputable counsel obtained after a fair and accurate disclosure to counsel of the facts on which advice is sought, may not serve as the basis of an action for malicious prosecution.' *Hunter v. Beckley Newspapers Corp.*, 129 W.Va. 302, Pt. 5 Syl. [40 S.E.2d 332]; *Wright v. Lantz*, 133 W.Va. 786, Pt. 2 Syl. [58 S.E.2d 123].

It appears that the evidence presented to the jury does not support the appellants' assertion that they relied on the advice of their counsel and the prosecuting attorney in filing a complaint for a felony warrant. Ms. Kratovil testified that she advised Richard Jarrell that "there might be criminal ramifications" of Pote's actions but also advised him that she was not a criminal lawyer. Ms. Kratovil further testified that she did not recommend to Richard Jarrell that he obtain a criminal warrant against Pote.[7] Moreover, Mr. Bailey, the prosecut-

---

**5.** At the preliminary hearing, in response to a question regarding the reasons for the issuance of the felony warrant, Richard Jarrell responded: "Because he said [he] wasn't going to pay it. Then afterwards, he did, but, you know, that was the basis of my warrant was to get, you know, my payment." Furthermore, Hollis Jarrell admitted at the hearing in the case now before us that he threatened to have a warrant issued for the appellee's arrest if the appellee failed to pay him the entire amount of damages he was claiming for the bulldozer.

We recognized in syllabus point 6 of *State v. Orth*, 178 W.Va. 303, 359 S.E.2d 136 (1986): "The prosecutorial services of the state are not for private use in civil debt collection."

**6.** The appellants did not raise an absolute defense to the action for abuse of process. Instead, the appellants argue, citing *Donohoe Construction Co., Inc. v. Mt. Vernon Associates,* 235 Va. 531, 369 S.E.2d 857, 862 (1988), that "a legitimate use of process to its authorized conclusion, even when carried out with bad intention, is not malicious abuse of that process."

**7.** Ms. Kratovil responded to the following questions:

Q. Mrs. Kratovil, you never did suggest to Mr. Jarrell that he should go to Mr. Pote and tell him that if he didn't pay these amounts, as set forth in the letter that you prepared, that he could get a criminal warrant for him? You never advised him to do that did you?

ing attorney, essentially testified that he never gave any indication to Richard Jarrell as to whether Pote had committed a criminal offense.[8] More importantly, however, is the fact that the jury was instructed on the advice of counsel defense but still returned a verdict against the appellants. Thus, we do not find merit in the appellants' argument that they relied on the advice of counsel.

## III

Evidence was presented to the jury and the jury was instructed on appellee Pote's theories of malicious prosecution, abuse of process, intentional infliction of emotional distress, extortion, defamation of character, negligent failure to withdraw the warrant and false arrest. Pote also introduced evidence that he incurred $8,348.00 in legal fees for his defense in the criminal case initiated against him by the appellants. Pote sought $25,000 in compensatory damages, $50,000 in general damages and $50,000 in punitive damages. Furthermore, appellee Interstate Drilling introduced evidence that the appellants may have been claiming more damages than were actually incurred by them with respect to the bulldozer, and that Interstate Drilling had paid the appellants $3,560.21 for damages to the bulldozer and lost income and wages.

The jury, after considering the evidence, awarded Pote compensatory damages in the amount of $12,000.00 and punitive damages in the amount of $35,000.00. The jury also awarded Interstate Drilling $2,000.00. The appellees suggest that since the appellants had been paid $3,560.21 by Interstate Drilling for damages and lost incomes and wages, that the jury must have found the appellants' actual damages to be $1,560.21.

The standards for determining whether there was sufficient evidence to support a jury verdict were recognized by this Court in syllabus point 1 of *Pinnacle Mining Co. v. Duncan Aircraft Sales of Florida, Inc.*, 182 W.Va. 307, 387 S.E.2d 542 (1989):

'In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.' Syllabus Point 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1984).

The issues in this case were properly before the jury, sufficient evidence was presented, and the jury, upon weighing that evidence, found in favor of Pote and Interstate Drilling.

## IV

We point out that punitive damages were awarded in this case. We further note that the United States Supreme Court, in *Pacific Mutual Life Ins. Co. v. Haslip*, — U.S. —, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), recently established standards to assist courts in scrutinizing punitive damage awards. These standards were then adopted by this Court in *Fleming Landfill, Inc. v. Garnes*, 186 W.Va. 656, 413 S.E.2d 897 (1991).

---

A. No, I would never advise anybody to do that.

Q. Why wouldn't you advise anybody to do that?

A. Because it is unethical, and because it is against the law.

**8.** Mr. Bailey's responses to the following questions on cross-examination indicate that Mr. Bailey did not advise Mr. Jarrell to file a complaint for a felony warrant:

Q. Did you indicate that you do not make the decision when someone comes in like that as to whether or not in your opinion a criminal offense may have been committed? You leave that to the magistrate?

A. I think that's primarily right. Somebody can come in and make an allegation to me, and I don't' have to believe them or disbelieve them, but to assist them.

Q. What did you do then? Merely look at the code section and to tell him what it might come under?

A. I think that would be fair to say.

Syllabus point 6 of *Fleming* states that all petitions for appeal will be reviewed by this Court on punitive damage issues where that error has been preserved for appeal. We add, however, that if the error is not preserved below or properly raised in this Court, the petition will not be granted. We stress, upon review, that the petition must meet the standards set forth in *Fleming* and the assignments of error relating to punitive damages must be specifically addressed. Moreover, even where a punitive damage issue is adequately preserved, we may conclude in our review of the petition that the error was harmless and refuse the petition. We want to emphasize that merely because error relating to a punitive damage award is asserted in the petition, that appeal will not automatically be granted on the punitive damage point alone.

We recognize that *Fleming* was decided after the appeal in this case. However, in the present case, no specific objection based on the criteria established in *Haslip* was raised below nor was the punitive damage issue argued in the briefs before us on appeal. We stated in syllabus point 6 of *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981): "Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."

Thus, for the reasons stated herein, we conclude that the judgment of the Circuit Court of Lewis County should be affirmed.[9]

Affirmed.

---

**9.** The appellants' other assignments of error concern the appellee's jury instructions. In *Roberts v. Stevens Clinic Hospital, Inc.,* 176 W.Va. 492, 497, 345 S.E.2d 791, 797 (1986), this Court stated that we "will presume that a trial court acted correctly in giving or refusing instructions, unless the instructions given were prejudicial or the instructions refused were correct and should have been given." (citation omitted). We further stated that in making this determination, we will review the instructions as a whole.

After reviewing the instructions in this case as a whole, we find that they were not prejudicial to the appellants and that there was evidence to support those instructions to the jury.