**Jack Earl WALKER and Eleanor Walker, Plaintiffs,**

v.

**The TYLER COUNTY COMMISSION, Gary Keller, personally and in his capacity as Sheriff of Tyler County, Earl Robert Kendall, personally and in his capacity as a Deputy Sheriff of Tyler County, Walter Smittle, personally, Robert Hall, personally, Mack Dennis, personally, Irvin Sopher, M.D., D.D.S., personally, George Trent, personally, Ron Gregory, personally, Carl Legurskey, personally, Nicholas Hun, personally, and Dave Vancamp, personally, Defendants.**

**Civ.A. No. 1:94–CV–143.**

United States District Court,
N.D. West Virginia.

May 22, 1995.

Stephen D. Herndon, Wheeling, WV, for plaintiffs.

Michael Kozakewich, Jr., Steptoe & Johnson, Clarksburg, WV, for defendants Tyler County Com'n, Gary Keller, and Earl Robert Kendall.

David L. Wyant, Shuman, Annand & Poe, Wheeling, WV, for defendants Walter Smittle, Robert Hall and Mack Dennis.

M. Richard Dunlap, Dickie, McCamey & Chilcote, Pittsburgh, PA, for defendant Irvin Sopher, M.D., D.D.S.

Harry M. Rubenstein, Kay, Casto, Chaney, Love & Wise, Morgantown, WV, for defendants George Trent, Ron Gregory, Carl Legurskey, Nicholas Hun and Dave VanCamp.

## MEMORANDUM OPINION AND ORDER

KEELEY, District Judge.

This matter is before the Court on defendant Dr. Irvin Sopher's ("Sopher") motion to dismiss the claims pending against him filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties have fully briefed this motion in accordance with Local Rule 2.07(f) and, accordingly, the Court finds it ripe for consideration.[1] For the reasons stated below, it is ORDERED that the Court hereby GRANTS–IN–PART and DENIES–IN–PART Sopher's motion.

## FACTUAL BACKGROUND

Initially, the Court notes that it can only grant Sopher's motion to dismiss if, after accepting all of the Walkers' allegations in the complaint as true, it concludes that they can prove no set of facts entitling them to relief. *See e.g., Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). Accordingly, the following narration of the events giving rise to this lawsuit reflects the Walkers' version of the facts.

### I.

On May 11, 1989, Jack Earl Walker ("Walker") was arrested in Tyler County for the murder of Mary Sherwood and arson of her home. He was incarcerated in the Tyler County jail until March 23, 1990, when he was found guilty of these charges and transferred to the West Virginia State Penitentiary in Moundsville, West Virginia to begin serving a life sentence.

The West Virginia Supreme Court of Appeals subsequently reversed Walker's conviction and remanded the case to Tyler County for a second trial. As a result, Walker was returned to the Tyler County jail where he remained throughout the second trial. On May 17, 1993, when this trial resulted in a hung jury, Walker was released from custody.

Thereafter, the state retried Walker again in April 1994. Pursuant to Walker's request, however, the third trial took place in Marshall County, West Virginia where, almost four years after his initial arrest, Walker was acquitted of the murder and arson charges pending against him.

On December 4, 1994 pursuant to 42 U.S.C. § 1983 and state law, Jack and Eleanor Walker ("the Walkers") filed suit in this Court against several defendants, including Sopher, for their allegedly malicious participation in Walker's prosecution. Insofar as these claims relate to Sopher, the Walkers contend that, as the Chief Medical Examiner for West Virginia during the relevant time period, Sopher played a key role in Walker's prosecution by providing false testimony and withholding and/or falsifying material evidence.

### II.

Sopher first became involved in this matter on May 11, 1989, when he conducted a post mortem examination of the victim, Mary Sherwood. As part of this examination, So-

1. Although Jack and Eleanor Walker included numerous exhibits to their response, these attachments add nothing substantive to their complaint which contains over one hundred pages of allegations and, accordingly, the Court declines this opportunity to convert Sopher's motion into one for summary judgment. *See Wilson–Cook Medical, Inc. v. Wilson,* 942 F.2d 247, 252 (4th Cir.1991) (holding that a Rule 12(b)(6) motion is only converted to a motion for summary judgment when a court accepts and considers matters outside of the pleadings).

pher reviewed an x-ray of Sherwood's skull and noticed what appeared to be a bullet in her head. Sopher removed fragments of this bullet and sent them to the Forensic Section of the West Virginia Department of Public Safety ("the Department") for analysis. Prior to receiving these lab results, however, Sopher verbally reported to Gary Keller ("Keller"), the former Sheriff of Tyler County, that Sherwood had died from smoke inhalation after receiving a gunshot wound to the left side of her head with what appeared to be a .38 caliber gun. Sopher never advised Walker of these initial conclusions.

The Department's analysis indicated that the bullet was not from .38 caliber gun but, rather, a Winchester Western Xpediter. Upon searching Walker's home, the police officers found neither Winchester Xpediter bullets nor .38 caliber cartridges. They did, however, find several .22 bullet cartridges.

Throughout Walker's prosecution, the state theorized that Walker had shot Sherwood with a .22 caliber gun, and, in an attempt to cover up his crime, then set her house on fire. When testifying as a witness for the state, Sopher allegedly tailored his testimony to reinforce this theory. For instance, at the first trial, Sopher declined to speculate as to the type of gun used to shoot Ms. Sherwood despite his initial conclusion that the perpetrator had used a .38 caliber gun. Moreover, he wholly neglected to testify about the Department's lab analysis, which also contradicted the state's theory.

In addition to this alleged perjury, Sopher failed to disclose much of the information obtained during his examination of the body despite a court order directing him to do so. In point of fact, prior to the first trial, Sopher provided only his final report and one photograph of Sherwood's skull, thereby depriving Walker of significant exculpatory evidence.

The judge presiding over the second trial directed Sopher to provide the court clerk with "all audio and video recordings of the autopsy, all photographs of the autopsy, all notes of the autopsy, all tests even with materials relevant to the determination of cause of death, and all notes and evidence reflecting the testing procedures used." Less than one month before the second trial was scheduled to begin, however, Walker informed the prosecution that Sopher had not complied with this order. As a consequence, the trial judge held a hearing on April 26, 1993, during which the state agreed to provide Walker with its prosecutorial file. Walker concedes that he received that file, but asserts, nonetheless, that Sopher kept various exculpatory materials in a separate investigatory file never disclosed to the defense.

At a pretrial conference held on May 15, 1993, the prosecution disclosed for the first time that Sopher had taken twelve photographic teaching slides of the autopsy as well as a number of x-rays which he had not provided to the court clerk. Sopher also had taken tissue and blood samples which he had never provided to Walker.[2] Finally, Sopher stated that he had recently discovered an undated hand drawn diagram of Sherwood's body which reinforced his theory that she had been shot on the left side of her head.

As part of his defense, Walker vigorously contested these conclusions at each trial, apparently arguing that Sherwood either intentionally or accidentally shot herself in the right side of her head after the fire had begun. Contrary to this theory, Sopher relied on the recently discovered diagram and testified that the x-rays of Sherwood's skull, when properly oriented in a vertical direction, proved that the wound was on the left side of the head. He further stated that he had based his conclusions on gas chromatography/mass spectrometry testing of Sherwood's blood.

The Walkers now contend that Sopher fabricated the undated drawing, incorrectly testified that the x-ray should be held in a vertical manner, and falsely represented that he had performed sophisticated and accurate testing techniques, when, in fact, Sopher had employed the far less reliable method of

---

2. The tissue samples mysteriously disappeared between the second and third trials. Sopher conceded discarding the blood samples but testi- fied that lab protocol did not require him to keep these materials.

sulfide extraction analysis. In addition, the Walkers charge that Sopher improperly destroyed the blood and tissue samples contrary to lab protocol which required examiners to maintain such evidence until two years after the last court action involving the deceased person.

On April 17, 1994, the day before the third trial was to begin, the state disclosed a number of autopsy related materials that it had not earlier provided to Walker in the first two trials. Nonetheless, although Sopher continued to maintain that Sherwood had been shot on the left side of her head, with the benefit of this previously withheld evidence Walker was acquitted on April 23, 1994.

### ANALYSIS

The precise legal theories which the Walkers intend to pursue against Sopher are not entirely clear from reading the complaint. They are apparently alleging that Sopher conspired with state officials to prosecute Walker in violation of 42 U.S.C. § 1983 by concealing exculpatory evidence and providing perjured testimony. The Walkers further contend that, under West Virginia law, Sopher committed the tort of malicious prosecution. Sopher responded to those allegations claiming that he is immune from suit under 42 U.S.C. § 1983 and, further, that the Walkers cannot state a claim for malicious prosecution under state law.

### A. The State Law Claim.

In *Pote v. Jarrell*, 186 W.Va. 369, 412 S.E.2d 770, 774 (1991), the West Virginia Supreme Court of Appeals reaffirmed that before a plaintiff can recover for malicious prosecution, he or she must prove:

(1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge;

(2) that it was caused or procured by defendant;

(3) that it was without probable cause; and

(4) that it was malicious.

*Id.* (citations omitted). In such a case, the plaintiff must overcome the presumption that a criminal prosecution is supported by probable cause and has been instituted to promote the ends of justice. *Id.* Where the evidence is not in dispute, whether or not a defendant acted maliciously and without probable cause is a question of law. *Morton v. Chesapeake and Ohio Ry. Co.*, 184 W.Va. 64, 399 S.E.2d 464, 467 (1990).

The existence of malice can be inferred by a lack of probable cause. *Id.* Whether or not probable cause exists, however, requires the Court to evaluate the honesty and reasonableness of the defendant's belief that the plaintiff was guilty. *Id.* Nonetheless, where, as here, a plaintiff contends that several defendants conspired to prosecute him or deliberately provided false testimony in order to secure his conviction, he has established a *prima facie* case for malicious prosecution. *Boxer v. Slack*, 124 W.Va. 149, 19 S.E.2d 606, 607–08 (1942).

Applying the foregoing principles to the facts involved here, there can be no doubt that the Walkers have adequately stated a claim for malicious prosecution against Sopher. If Sopher fraudulently conspired with the prosecution to procure Walker's conviction and, in doing so, concealed highly probative exculpatory evidence, Sopher must not have honestly believed that Walker murdered Mary Sherwood and, therefore, acted without probable cause and, by implication, with malice. *Morton, supra.* The fact that Walker was indicted and initially convicted would not negate this finding. *See Boxer, supra.*

Nor can Sopher successfully assert that he did not procure the initial prosecution in this case. The gravamen of the Walkers' complaint is that throughout the four-year period during which Walker was forced to continually defend himself, Sopher and the other defendants involved here relentlessly pursued his prosecution. These allegations, as such, are sufficient to state a claim for malicious prosecution.

### B. The 42 U.S.C. § 1983 Claim.

Malicious prosecution claims may state a constitutional deprivation adequate to create a cause of action under 42 U.S.C.

§ 1983, particularly where the plaintiff is subjected to serious charges resulting in incarceration. *Goodwin v. Metts*, 885 F.2d 157, 163 (4th Cir.1989). Allegations that defendants have conspired to prosecute a plaintiff by withholding evidence can likewise give rise to a § 1983 claim. *See Carter v. Burch*, 34 F.3d 257, 259 (4th Cir.1994). Accordingly, there can be no doubt that the Walkers have, in the abstract, stated a viable cause of action pursuant to 42 U.S.C. § 1983. The question this Court must now resolve is whether Sopher is immune from suit under the doctrines of absolute and/or qualified immunity.

### 1. Absolute Immunity.
#### a. Witness Immunity.

■ In *Burke v. Miller*, 580 F.2d 108, 109 (4th Cir.1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1268, 59 L.Ed.2d 487 (1979), the Fourth Circuit Court of Appeals dismissed a state medical examiner who had allegedly conspired with the prosecution in an underlying criminal trial on the grounds that, as a witness, the examiner was absolutely immune from suit under § 1983. Relying on the Supreme Court's decision in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Court of Appeals explained:

> [T]he participation of the defendant doctor in our case was an "integral part of the judicial process" (quoting *Imbler* at 430 [96 S.Ct. at 995]) ... [and] his "activities were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force." (quoting *Id.*)

*Id.* In *Briscoe v. LaHue*, 460 U.S. 325, 328 n. 4, 103 S.Ct. 1108, 1112 n. 4, 75 L.Ed.2d 96 (1983), the United States Supreme Court,

citing *Burke, supra*, concluded that a police officer can invoke absolute immunity under § 1983 against claims that he committed perjury.[3]

The Walkers contend, in part, that Sopher knowingly and intentionally provided false testimony under oath in order to promote the state's theory of the case and ensure the likelihood of Walker's conviction. Inasmuch as *Burke, supra*, and *Briscoe, supra* immunize Sopher for his alleged perjury in all three criminal trials, the Court hereby grants his motion to dismiss these claims.

#### b. Prosecutorial Immunity.

The more difficult question, however, concerns whether or not Sopher may invoke prosecutorial immunity for his alleged withholding of exculpatory evidence. In determining whether a defendant can invoke absolute immunity for administrative functions, a court must determine whether the acts complained of are prosecutorial in nature, and therefore protected.

In *Carter, supra* at 267, the Court of Appeals for the Fourth Circuit affirmed a district court's decision to grant a prosecutor absolute immunity in a § 1983 action in a case involving facts similar to those presented here. In that case, Carter had served four years in prison due to the prosecutor's failure to provide exculpatory evidence at the time of the first trial. *Id.* at 259. Upon the discovery of this evidence, Carter was retried, and ultimately acquitted. *Id.* Although permitting Carter's suit against a deputy sheriff to proceed, the Court of Appeals found that the prosecutor was immune from suit because his decision not to provide the defense with the allegedly exculpatory evidence involved his actions "as an advocate

---

**3.** In *Lewis v. McDorman*, 820 F.Supp. 1001, 1007 (W.D.Va.1992), the Western District of Virginia recently declined to afford a police detective the benefits of such immunity for his alleged suppression of an exculpatory lab analysis in a malicious prosecution action brought under 42 U.S.C. § 1983 stating:

> The elements of a claim for wrongful prosecution ... differentiate the instant action from the case where an isolated witness, or witnesses in concert, commit perjury or withhold evidence.... The latter case, of course, raises all of the censorship concerns adduced in *Briscoe* to support absolute immunity. It is difficult, however, to discern how the court risks witness self-censorship declining to extend such immunity to those who would initiate or abet a wrongful prosecution. Thus, the court finds that defendant may not avail himself of *Briscoe* immunity in this case.

*Id.* at 1008. Nonetheless, although this language purports to distinguish the *Lewis* facts from those presented in either *Briscoe* or *Burke*, this Court is not persuaded and will not contort the law to avoid application of binding precedent to the facts presented here.

of the State," and were not merely investigative in nature. *Id.* at 262. However, the Court distinguished the facts before it from a situation where prosecutorial misconduct occurs prior to the initiation of the judicial process, reasoning that such misconduct would not be subject to absolute immunity. *Id.* at 263. *See also Buckley v. Fitzsimmons,* — U.S. —, 113 S.Ct. 2606, 113 S.Ct. 2606 (1993).

■ The Fourth Circuit has never addressed a situation analogous to that presented here. In other circumstances, however, it has extended absolute immunity to court appointed guardians ad litem as well as social workers for acts occurring within the judicial process. *Fleming v. Asbill,* 42 F.3d 886, 889 (4th Cir.1994); *Vosburg v. Dept. of Social Services,* 884 F.2d 133 (4th Cir.1989). Such immunity is justified in any situation where an administrative actor must regularly exercise discretion in judicial proceedings and, in the absence of such immunity, would likely be subject to numerous lawsuits which could jeopardize the exercise of that discretion. *Vosburg, supra* at 137. Under these circumstances, the actor is more like a prosecutor than any other type of official, and the concerns present in *Imbler, supra,* warrant extending the doctrine of absolute immunity.

District courts, however, have declined to extend absolute immunity to medical examiners for alleged misconduct in conducting an autopsy. *See Wolff v. Faris,* No. 88 C 10765, 1989 WL 84718, at *8, 1989 U.S.Dist. LEXIS 8520, at *24 (N.D.Ill. July 20, 1989); *see also Kompare v. Stein,* 801 F.2d 883, 887 n. 3 (7th Cir.1986).

■ Turning to the facts presented here, the Court must determine whether Sopher was acting in a prosecutorial or investigative capacity when he allegedly withheld and falsified evidence. In the three underlying trials involved here, the trial judge directly ordered Sopher to release *all* evidence relevant to the autopsy, and, in doing so, explicitly deprived Sopher of the discretion to determine evidence that was exculpatory and evidence that need not be revealed. This order, in essence, merely reinforced Sopher's statutory duty to disclose these materials. *See W.Va.Code* § 61–12–10 ("Copies of such rec-

ords or information shall be furnished, upon request, to any party to whom the cause of death is a material issue.") Under these circumstances, the Court finds that Sopher's role was more analogous to that of a sheriff who is directed to provide documents obtained during his investigation than to a social worker with discretion to decide whether or not to file a removal petition, and thereby initiate judicial proceedings. *Vosburg, supra.* Accordingly, it would be inappropriate to afford Sopher the benefits of absolute immunity for refusing to disclose evidence revealed as a part of his investigation, particularly when a sheriff in similar circumstances could not do so. *See Carter, supra.* For this Court to find otherwise would make a mockery of the judicial system by unrealistically extending the definition of a prosecutorial function to include almost any witness possessing relevant information.

### 2. *Qualified Immunity.*

Although it is correct that Sopher is absolutely immune for any claims of perjury which occurred while testifying as a witness in the underlying criminal trials, he may still be held liable for his alleged refusal to furnish the defense with records from Sherwood's autopsy unless he can invoke the doctrine of qualified immunity.

■ An executive official is entitled to qualified immunity where an objective observer could find that the officer reasonably believed that his conduct did not violate clearly established constitutional rights. *See e.g. Sevigny v. Dicksey,* 846 F.2d 953, 956 (4th Cir.1988) (citations omitted). In *Kompare, supra,* the Court of Appeals for the Seventh Circuit, presented with the question of whether a medical examiner could invoke qualified immunity, compared the examiner's role to that of a police officer stating:

> The medical examiner's function in performing an autopsy is analogous to that of a police officer investigating a suspected homicide. Therefore, coroners enjoy the same qualified immunity as police officers or other investigators for the state prosecutor.

*Id.* at 887 (citation omitted).

In *Goodwin, supra,* the Court of Appeals for the Fourth Circuit affirmed a district

court's refusal to grant an investigating police officer qualified immunity for his alleged failure to disclose exculpatory evidence to a prosecutor, and which "assisted in the actionable continuation of the prosecution of [the plaintiffs]." *Id.* at 160–61. Applying the test for qualified immunity enunciated above, the Court of Appeals concluded that a reasonable officer should have known that the failure to reveal potentially exculpatory evidence could violate an individual's right to only be prosecuted upon a finding of probable cause. *Id.* at 164.

 Sopher is in a position similar to a police officer; accordingly, under *Goodwin,* he is not immune from claims that he knowingly withheld material evidence from the defense in order to convict Walker. These allegations not only suggest that Sopher knew he was violating Walker's constitutional rights, they imply that he willfully did so. Accordingly, this is not a situation where an investigating officer should be protected by the doctrine of qualified immunity.

Despite Sopher's urging to the contrary, this Court is not persuaded that the Fourth Circuit's *en banc* decision in *Gooden v. Howard County, Md.,* 954 F.2d 960 (4th Cir.1992), requires a different result here. In *Gooden,* the plaintiff filed suit pursuant to 42 U.S.C. § 1983 against various police officers who had mistakenly arrested her and forced her to undergo a psychiatric evaluation. *Id.* at 964. The officers erroneously believed that unexplainable screams in both male and female voices were coming from the plaintiff's apartment when, in fact, the couple living below the plaintiff was having an argument. *Id.* at 962–64. The officers concluded that the plaintiff might be suffering from some sort of mental disorder and decided to arrest her and have a physician conduct an emergency psychiatric evaluation. *Id.*

Although the Court of Appeals had initially affirmed the district court's decision denying the police officers qualified immunity (*see Gooden v. Howard County, Md.,* 917 F.2d 1355 (4th Cir.1990)), relying on the basic principles of qualified immunity, an *en banc* court concluded that the officers in that case neither acted unreasonably under the circumstances nor violated any clearly established constitutional rights of the plaintiff. *See Gooden,* 954 F.2d at 964–66. To the contrary, the Court reasoned that the facts in *Gooden* presented exactly the type of situation where police officers should be entitled to qualified immunity: that is, they were exposed to a potential lawsuit no matter which course of action they pursued. *Id.* at 967.

*Gooden* is clearly distinguishable on its facts from the case at bar. Here, the Walkers allege that Sopher concealed exculpatory evidence, conduct which is inherently unreasonable and in violation of Jack Walker's constitutional rights. As such, *Goodwin* is more analogous to the facts presented here, and Sopher is not entitled to a grant of qualified immunity.

*CONCLUSION*

For the foregoing reasons, the Court hereby GRANTS–IN–PART and DENIES–IN–PART Sopher's motion to dismiss. The Walkers are free to pursue their state law claims against Sopher as well as their cause of action brought pursuant to 42 U.S.C. § 1983 for those allegations relating to Sopher's failure to disclose or maintain exculpatory evidence and for other misconduct which allegedly occurred in the investigatory phase of these proceedings. Sopher is otherwise immune from suit here.