MEMORANDUM ORDER
 

 COPENHAVER, District Judge.
 

 This matter is before the court on the motion and supplemental motion for summary judgment filed by defendants Carl R. Smithers, Houston M. Eads and David W. Skeen on October 4, 1994, and January 23, 1995, and on the motion and supplemental motion for summary judgment filed by defendants Robin K. Welch and Tony Morgan on October 5,1994, and January 20,1995.
 
 [1]
 

 I.
 
 Background
 

 The following facts are taken from plaintiffs’ second amended complaint. Plaintiff Michael Rhodes was employed by the Sheriffs Department of Roane County, West Virginia, as á correctional officer at the Roane County Jail on January 23, 1993, when two inmates, Troy Fredrick and Michael Drennen, escaped from the jail’s recreation room at a time when Michael Rhodes was not on duty. On January 25, 1993, the Sheriff of Roane County requested assistance from the West Virginia Department of Public Safety in investigating the escape and other possible irregularities in procedures at the jail, including the presence of contraband. Defendant Smithers, a West Virginia State Police law enforcement officer, was placed in charge of the investigation, to be assisted by State Police law enforcement officers Eads and Skeen. Defendant Welch, the prosecuting attorney for Roane County, offered advice and assistance in the investigation and participated in the interrogation of witnesses.
 
 *1262
 
 The investigation concluded in early March 1993.
 

 On March 9, 1993, Smithers, with the advice and cooperation of Welch, prepared a report of the investigation, which consisted in part of materials prepared by others. Smithers forwarded the report to Welch. The report included a confession of a former inmate trustee who admitted that he helped the escapees obtain a key to the jail recreation room door. Nonetheless, the report concluded that Michael Rhodes alone assisted the inmates in their escape. The report also contained confessions from inmates, visitors, trustees, and others, admitting that they had transported contraband into the jail. Michael Rhodes and other jail personnel were implicated in the report on contraband activities.
 

 On or about May 25, 1993, Smithers and Eads, with the advice, consent and assistance of Welch, selected Skeen as the person to testify before the Roane County Grand Jury about the results of the jail investigation. The escape matter was presented to the grand jury by Welch on May 26, 1993, through the testimony of Skeen. Skeen testified that Michael Rhodes was solely responsible for the escape, denied that another person had given the escapees a key, and suppressed all mention of the confession of the former inmate trustee that he had helped the inmates obtain a key. The grand jury returned an indictment against Michael Rhodes and two other individuals on May 26, 1993. Michael Rhodes was indicted for violation of Chapter 61, Article 5, section nine, of the West Virginia Code, a felony charge of assisting a prisoner in an escape.
 
 [2]
 
 The two other individuals were indicted as being principals after the fact for their role in aiding and abetting the concealment of the escapees. No indictments were returned at that time with respect to contraband activities. Michael Rhodes plead not guilty to the escape charge and was released on bond on May 28,1993.
 

 On August 30,1993, Welch requested leave to withdraw as prosecutor on the escape indictments on the ground that he had a conflict of interest. The request was granted on September 28, 1993, and defendant Morgan was appointed special prosecutor on the escape charges. Morgan moved to dismiss the indictment against Michael Rhodes on December 3, 1993, on the asserted ground that there was insufficient evidence to support the charge. The motion was granted and the escape charge against Michael Rhodes was dismissed on January 26, 1994. Escape charges against the other two individuals were also dismissed.
 

 After the escape charge was dismissed, Michael Rhodes made it known that he had retained counsel to file suit against certain of the defendants in connection with the escape investigation and prosecution. On January 27,1994, Michael Rhodes announced publicly that he intended to bring suit alleging that one or more of the defendants had acted to deprive him of his civil rights. This action was then instituted on March 4,1994.
 

 On December 22, 1993, Morgan was appointed special prosecutor for the purpose of investigating alleged contraband activities at the jail. In January 1994, Eads, at the request of Morgan, renewed the contraband investigation and the possible involvement of Michael Rhodes in those activities. During the renewed investigation, Eads received adviee and assistance from Morgan and, at times, from Welch. Both Morgan and Welch participated in the investigation, including the interrogation of witnesses. Michael Rhodes was the target of the investigation. In conducting the renewed investigation, Eads talked to witnesses who had been interviewed during the escape investigation and either confessed to or were implicated with respect to delivery of alcohol and drugs to inmates at the jail. Eads offered immunity to some of the twelve individuals implicated in the contraband activities in exchange for their testimony against Michael Rhodes. On March 10, 1994, Eads, with the advice and cooperation of Morgan, prepared a report of the contraband investigation. Notwithstanding contrary conclusions of Smithers in his earlier report to the effect that other correctional officers were involved, Eads reported
 
 *1263
 
 that Michael Rhodes was the only jail employee implicated in contraband activities.
 

 The results of the contraband investigation were presented to the Roane County Grand Jury by Morgan on May 25, 1994, through the testimony of Eads. Eads testified that the witnesses he interviewed had implicated Michael Rhodes and that Michael Rhodes was solely responsible for allowing alcohol to be brought into the jail. On May 25, 1994, the grand jury returned an indictment against Michael Rhodes for three felony counts of violation of Chapter 61, Article 5, section 8, of the West Virginia Code, transportation of contraband into a jail.
 
 [3]
 
 No other persons were indicted on contraband charges. On May 26, 1994, Michael Rhodes pleaded not guilty to the contraband charges and was released on bond. After the indictment of Michael Rhodes, Eads, with the advice and assistance of Welch and Morgan, continued his investigation of Michael Rhodes with respect to the contraband charges. The contraband charges were tried before a jury on October 11, 1994, through October 13, 1994. Michael Rhodes was acquitted on all three felony contraband charges.
 

 On the basis of the above summarized allegations, taken from the complaint, plaintiffs allege five causes of action. Count I, brought pursuant to Title 42, United States Code, section 1983, is directed to the conduct of the police officer defendants and prosecutor Welch in the escape investigation and charges against Michael Rhodes. It is alleged that the investigation by the police officers, with the advice and assistance of Welch, was faulty in that it targeted Michael Rhodes and failed to pursue evidence tending to exculpate him; that the escapees and other witnesses were coerced, encouraged and induced to give false and misleading statements incriminating Michael Rhodes; and that the substance of witnesses’ statements was suppressed, altered or incorrectly reported for the purpose of incriminating Michael Rhodes. (Compl. ¶ 40.) It is also asserted that the report of Smithers presented the escape investigation results in a false and misleading manner so as to incriminate only Michael Rhodes; that it withheld or suppressed investigation results tending to exculpate Michael Rhodes; that it suppressed, altered or incorrectly reported the substance of witnesses’ statements for the purpose of incriminating Michael Rhodes; and that it falsely charged Michael Rhodes with assisting in the escape. (Compl. ¶ 41.) Count I also contends that Skeen, pursuant to the instructions of Smithers, Eads and Welch, falsely testified before the grand jury by denying the existence of a confession from a former inmate trustee .that he had assisted the escapees in obtaining a key to the recreation room door. (Compl. ¶42.) Smithers and Eads are thus alleged to have failed to adequately train Skeen and properly supervise and control his actions. (Compl. ¶¶ 43-44.)
 

 According to plaintiffs’ complaint, the conduct described in Count I deprived Michael Rhodes of his constitutionally protected rights to security of person, to substantive and procedural due process, and to equal protection, for all of which he is entitled to compensatory damages from the police officer defendants and prosecutor Welch in their individual capacities. (Compl. ¶45.) Plaintiffs also seek punitive damages on the Count I claim and prospective relief designed to guard against the threat of future violations of Michael Rhodes’ civil rights. (Compl. ¶¶ 47-48.)
 

 In responding to the defendants’ supplemental motions for summary judgment, plaintiffs state that their Count I section 1983 claim is based on lack of probable cause for the escape charge, it being asserted that “Michael Rhodes was charged and prosecuted, without probable cause on the basis of an incompetent misdirected investigation and perjured grand jury testimony, for allowing prisoners to escape from his custody.” (Pis.’ Opp’n Defs.’ Supp.Mot.Summ.J. at 2 & n. 2.)
 

 Count II, also brought as a section 1983 claim, relates to the conduct of Eads, Morgan and Welch in connection with the contraband charges brought against Michael Rhodes. In that regard, it. is asserted that after the
 
 *1264
 
 investigation into jail irregularities, including contraband activities, had ostensibly concluded on March 9, 1993, with the submission of Smithers’ reports on the escape investigation, Eads, with the assistance and under the direction of prosecutors Welch and Morgan, renewed the investigation of contraband activities. In the course of the renewed investigation, it is alleged that Eads, Morgan and Welch targeted Michael Rhodes as the sole subject of the investigation without following other leads and without regard to confessions from others; that they coerced, encouraged and induced former jail inmates and others to give false and misleading statements incriminating Michael Rhodes; that Eads and Morgan failed to interview known witnesses, ignored or failed to pursue matters tending to exculpate Michael Rhodes, failed to develop an accurate report of the facts, and failed to verify the accuracy of investigation results; that Eads suppressed, altered and/or incorrectly reported the substance of witnesses’ statements with the purpose of incriminating Michael Rhodes; that Eads, Morgan and Welch, without prior court approval, offered immunity from prosecution, or similar inducement, to “anyone” who would testify against Michael Rhodes, including persons who had previously confessed to or were implicated in contraband activities; and that Eads, with the assistance of Welch, induced others charged by the City of Spencer with unrelated crimes to give false testimony against Michael Rhodes in exchange for dropping the City’s charges against them, all for the purpose of incriminating and prosecuting Michael Rhodes without probable cause and contrary to fact. (Compl. ¶51.)
 

 In Count II, it is also contended that Eads presented contraband investigation results in a false and misleading manner; withheld or suppressed investigation results tending to exculpate Michael Rhodes; suppressed, altered and/or incorrectly reported the substance of witnesses’ statements; falsely charged Michael Rhodes with transporting contraband into the jail; and testified falsely before the grand jury which indicted Michael Rhodes on the contraband charges. (Compl. ¶¶ 52-53.) The conduct alleged in Count II is claimed to be without probable cause and in deprivation of Michael Rhodes’ right to security in his person, right to substantive and procedural due process and equal protection, for all of which he is entitled to compensatory and punitive damages from Eads, Morgan and Welch in their individual capacities. (Compl. ¶¶ 57, 59.) Count II also seeks prospective relief against future violations of Michael Rhodes’ constitutional rights. (Compl. ¶ 60.)
 

 The Count II section 1983 claim is described in plaintiffs’ memorandum in opposition to defendants’ supplemental motion for summary judgment as being based on two theories: (1) lack of probable cause for targeting, charging and prosecuting Michael Rhodes on contraband charges, and (2) retaliation against Michael Rhodes for the exercise of federal statutory rights by bringing the contraband charges against him in retaliation for the filing of this suit. (Pis.’ Opp’n Defs.’ Supp.Mot.Summ.J. at 2 & n. 3.)
 

 Count III is a conspiracy claim against all defendants under Title 42, United States Code, section 1985, directed to the conduct complained of in Counts I and II. It is alleged that Smithers, Skeen and Welch agreed with Eads to target Michael Rhodes and charge him with assisting in an escape for the purpose of facilitating the prosecution of others “by enhancing the credibility of the statements purportedly made by the escapees, in order to shield persons otherwise implicated in the escape, and/or to discredit [Michael Rhodes].” (Compl. ¶ 62(a).) In addition, Count III asserts that Morgan and Welch agreed with Eads to target Michael Rhodes in the contraband investigation to deter him and punish him for filing this lawsuit; to shield persons otherwise implicated in contraband activities; and/or to rehabilitate the image and credibility of the defendants who investigated the escape. (Compl. ¶ 62(b).) The purpose of the conspiracy was to deprive Michael Rhodes of security in his person, of due process, of equal protection, and of equal privileges and immunities, and to prosecute him falsely and without probable cause, for all of which, Michael Rhodes seeks compensatory and punitive damages and prospective relief against the threats of further violations of his constitutional rights. (Compl. ¶¶ 64r-66.)
 

 
 *1265
 
 A state law malicious prosecution claim is the substance of Count IV, in which it is alleged that the police officer defendants maliciously prosecuted Michael Rhodes on the escape and contraband charges. Count V is a state law claim for intentional infliction of emotional distress by Michael Rhodes against the police officer defendants. In Count VI, Danita Rhodes asserts against the defendant police officers a state law claim for the intentional infliction of emotional distress.
 

 II.
 
 Discussion
 

 A
 
 Summary Judgment Standard.
 

 Defendants are entitled to summary judgment upon a showing “that there is no genuine issue as to any material fact and that [they are] entitled to judgment as a matter of law.” Fed.R.Civ-P. 56(c). Material facts are those necessary to establish the elements of a party’s cause of action under controlling substantive law.
 
 Anderson v. Liberty Lobby,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If essential facts specifically averred by opposing parties are contradictory, the
 
 motion
 
 must be denied.
 
 Lujan v. National Wildlife Fed’n,
 
 497 U.S. 871, 888, 110 S.Ct. 3177, 3188-89, 111 L.Ed.2d 695 (1990). On the other hand, defendants are entitled to summary judgment if plaintiffs have faded to establish an essential element of their causes of action,
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322-23,106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986), or if “the record as a whole could not lead a rational trier of fact to find” in their favor,
 
 Williams v. Griffin,
 
 952 F.2d 820, 823 (4th Cir.1991) (citing
 
 Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
 
 475 U.S. 574, 587, 106 S.Ct. 1348,1356, 89 L.Ed.2d 538 (1986)).
 

 In reviewing the evidence, the court must not resolve disputed facts, weigh the evidence,
 
 Ross v. Communications Satellite Corp.,
 
 759 F.2d 355, 364 (4th Cir.1985), or make determinations of credibility,
 
 Sosebee v. Murphy,
 
 797 F.2d 179, 182 (4th Cir.1986). Indeed, plaintiffs are entitled to have their version of the facts accepted as true and all internal conflicts resolved in their favor.
 
 Charbonnages de France v. Smith,
 
 597 F.2d 406, 414 (4th Cir.1979) (quoting
 
 Pierce v. Ford Motor Co., 190 F.2d 910, 915
 
 (4th Cir.),
 
 cert. denied, 342
 
 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951)). Nonetheless, a properly supported motion for summary judgment cannot be defeated by evidence that is “merely colorable,”
 
 M & M Medical Supplies & Serv., Inc. v. Pleasant Valley Hosp.,
 
 981 F.2d 160, 163 (4th Cir.1992),
 
 cert. denied,
 
 508 U.S. 972, 113 S.Ct. 2962, 125 L.Ed.2d 662 (1993) (quoting
 
 Anderson,
 
 477 U.S. at 249-50, 106 S.Ct. at 2510-11), or by mere eonclusory allegations or denials in the opposing party’s pleadings or affidavits, or by “presuming” missing facts.
 
 Lujan,
 
 497 U.S. at 889, 110 S.Ct. at 3189; Fed.R.Civ.P. 56(e). Rather, the motion must be opposed by affidavit or otherwise setting forth “specific facts showing there is a genuine issue for trial.”
 
 Id.
 

 “The requirement that there be a ‘genuine issue’ about the facts material to a claim ‘means that the evidence must create fair doubt; wholly speculative assertions will not suffice.”
 
 Thacker v. Peak,
 
 800 F.Supp. 372, 375 (S.D.W.Va.1992) (quoting
 
 Ross,
 
 759 F.2d at 364). Stated conversely, summary judgment is not appropriate if the evidence is sufficient for a reasonable jury to return a verdict in favor of the plaintiffs.
 
 Anderson,
 
 477 U.S. at 248, 106 S.Ct. at 2510. Nor is summary judgment appropriate “even where there is no dispute as to the evidentiary facts but only as to the conclusions to be drawn from them.”
 
 Overstreet v. Kentucky Cent. Life Ins. Co.,
 
 950 F.2d 931, 937 (4th Cir.1991) (quoting
 
 Pierce,
 
 190 F.2d at 915). Inferences “drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.”
 
 United States v. Diebold, Inc.,
 
 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). The inferences suggested by the opposing party must, however, be “reasonable in light of the competing inferences.”
 
 Matsushita,
 
 475 U.S. at 588, 106 S.Ct. at 1356.
 

 B.
 
 Prosecutor Defendants’ Motion for Summary Judgment.
 

 In their motion and supplemental motion for summary judgment, prosecutors Welch and Morgan maintain that with respect to plaintiffs’ section 1983 claims against them, all of their actions are protected by the abso
 
 *1266
 
 lute immunity afforded prosecutors in the performance of their prosecutorial functions. Alternatively, they seek summary judgment on the section 1983 claims in Counts I and II on the ground that they are entitled to qualified immunity. As to the Count III section 1985 conspiracy claim, the prosecutor defendants contend that plaintiffs have done nothing more than make conclusory allegations of a conspiratorial agreement to violate Michael Rhodes’ constitutional rights.
 

 1.
 
 Absolute Immunity.
 
 The parties agree that the prosecutor defendants are entitled to absolute immunity for the performance of prosecutorial functions, as contrasted with administrative duties or investigatory functions. That is, they are absolutely immune for acts taken in “the initiation and pursuit of a criminal prosecution, including presentation of the state’s case at trial.”
 
 Buckley v. Fitzsimmons,
 
 509 U.S. 259, 269, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993) (citing
 
 Imbler v. Pachtman,
 
 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). Indeed, absolute immunity extends as well to “actions' preliminary to the initiation of a prosecution and actions apart from the courtroom.”
 
 Id.
 
 at 272, 113 S.Ct. at 2615 (quoting
 
 Imbler,
 
 424 U.S. at 431, 96 S.Ct. at 995-96). For example, the professional evaluation of evidence assembled by the police and preparation for its introduction at trial or before a grand jury, including efforts to control the presentation of a witness’ testimony, are duties associated with the prosecutor’s role as advocate for the state and, accordingly, are entitled to absolute immunity.
 
 Id.
 
 A prosecutorial decision to withhold materially exculpatory evidence and the presentation of false testimony are likewise matters entitled to absolute immunity.
 
 Carter v. Burch,
 
 34 F.3d 257, 262-63 (4th Cir.1994),
 
 cert. denied,
 
 — U.S. -, 115 S.Ct. 1101, 130 L.Ed.2d 1068 (1995).
 

 On the other hand, “investigatory functions that do not relate to an advocate’s preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.”
 
 Buckley,
 
 509 U.S. at 273, 113 S.Ct. at 2615 (citing
 
 Burns v. Reed, 500
 
 U.S. 478, 491, 111 S.Ct. 1934, 1941-42, 114 L.Ed.2d 547 (1991)). Rather, the prosecutor’s role as an advocate, and the attachment of absolute immunity, does not commence until the prosecutor has probable cause for an arrest.
 
 Buckley,
 
 509 U.S. at 273-75, 113 S.Ct. at 2616. Consequently, when prosecutors advise police on how to conduct an investigation, when prosecutors undertake themselves to perform investigatory work prior to a determination that there is probable cause for an arrest, and when prosecutors fabricate false evidence during an investigation preliminary to a probable cause determination, they are not afforded the protection of absolute immunity.
 
 [4]
 

 Id.
 
 at 269-77, 113 S.Ct. at 2614-17. The prosecutor’s protection of absolute immunity ceases at the conclusion of his advocacy role in presenting the state’s case during trial and post-trial proceedings.
 
 Allen v. Lowder,
 
 875 F.2d 82, 85-86 (4th Cir.1989);
 
 accord Houston v. Partee,
 
 978 F.2d 362 (7th Cir.1992),
 
 cert. denied,
 
 507 U.S. 1005, 113 S.Ct. 1647, 123 L.Ed.2d 269 (1993).
 

 Recognizing the contours of absolute prosecutorial immunity as summarized, plaintiffs contend that there are certain specific acts of Welch and Morgan that are properly characterized as coming within the ambit of administrative and investigatory functions not entitled to absolute immunity.
 

 a.
 
 Prosecutor Welch.
 
 As to Welch, the prosecuting attorney involved in the escape prosecution, it is agreed that Welch was present when the escapee, Michael Drennen, was questioned by officers Eads and Smithers on January 30, 1993, (Welch Aff. ¶ 5), more than five weeks before Smithers presented his March 9, 1993, report to Welch and nearly four months before the escape matter was presented to the grand jury on May 26, 1993. Plaintiffs thus assert that the January 30, 1993, incident occurred during the investigatory stages, before a probable cause determination was made on the basis of Smithers’ report and, consequently, prior to the attachment of absolute prosecutorial immunity.
 

 
 *1267
 
 Plaintiffs also posit that it is reasonable to conclude that Welch gave the police officers advice on how to conduct their investigation, from which conduct he would not be shielded by absolute immunity. Plaintiffs maintain that the conclusion is reasonable because, as Welch concedes, he was also in attendance when Shirley Ann Drennen, Michael Drennen’s mother, and Lisa Dawn Shaffer, Michael Drennen’s girlfriend, were questioned by state police officers,
 
 [5]
 
 (Welch Aff. ¶¶ 8,10), and, as Welch further acknowledges, he advised the police as to whether Ms. Drennen and Ms. Shaffer were subject to prosecution for aiding and abetting in the escape, (Welch Aff. ¶9). In addition, plaintiffs state that Welch knew that Drennen was not a credible witness but nonetheless used Drennen’s testimony as a basis for charging Michael Rhodes with assisting in the escape in order to make Drennen a more credible witness in the prosecution of other individuals for unrelated crimes. Given that motivation, say plaintiffs, it is reasonable to conclude that Welch’s attitude affected the whole investigation of Michael Rhodes in such a manner that Welch was involved in the entire course and tenor of the investigation.
 

 In addition to specifying Welch’s presence at the January 30, 1993, interrogation of Michael Drennen, plaintiffs point to two incidents during which they contend Welch acted without absolute immunity because the events occurred after Welch ceased acting as prosecutor on the escape charge. They contend that contrary to Welch’s assertion that he had no role in the prosecutions of Michael Rhodes after September 20, 1993, when he was removed from the escape ease, (Welch Aff. ¶¶ 19, 22, 24), Welch, shortly before March 2,1994, advised Eads in the course of his contraband investigation.. In that regard, plaintiffs contend that when Eads undertook to interview Chad Harbolt,. Welch told Eads that Harbolt, as part of his plea agreement on a malicious wounding charge, “had to provide any information concerning any crimes he was aware of to authorities.” (Eads’ 3/10/94 Rep. at 9.) Thus, plaintiffs assert, Eads was able to use Welch’s threat to induce Harbolt to sign a statement implieating Michael Rhodes in contraband activities.
 

 Plaintiffs further allege that in July 1994, Welch approached James Knicely and offered to have misdemeanor charges against him dropped if Knicely would testify against Michael Rhodes in the contraband case then pending. (Knicely Statement, Attach, to Pis.’ Mem.Opp’n Mot.Summ.J). If Knicely is believed, plaintiffs argue, then the entirety of Welch’s affidavit in this action is impeached and a trier of fact could disbelieve all of Welch’s protestations of non-involvement in matters not subject to absolute immunity. Moreover, say plaintiffs, Knicely’s statement indicates that he was coerced by Eads into signing a statement that falsely implicated Michael Rhodes in the contraband activities.
 
 (See
 
 Knicely Statement.)
 

 Insofar as plaintiffs contend that Welch is not entitled to absolute immunity for his presence at the Drennen interview conducted by Eads and Smithers on January 30,1993, it must be conceded that at the time of the interview, there was no probable cause to arrest Michael Rhodes for assisting in the escape. By attending the interview, Welch was participating in an investigative function for which no absolute prosecutorial immunity is recognized. However, plaintiffs’ contention that inasmuch as Welch advised police officers about whether Ms. Drennen and Ms. Shaffer were subject to prosecution, it is reasonable to conclude that he also advised police officers about how to conduct their escape investigation, is nothing more than speculative assertion -based on an inference which is not reasonably supportable. It is not reasonable to infer that because Welch, performing a traditional prosecutorial role, advised police on whether Ms. Drennen and Ms. Shaffer were subject to prosecution, he also gave them advice on how to conduct the entirety of the escape investigation, a matter reserved to the discretion of the investigating officers. Nor, regardless of Welch’s motivation, can it be presumed that his attitude was such that it affected the entire investigation as though he was an active participant.
 
 *1268
 
 Plaintiffs have failed to meet their burden of showing a genuine issue of fact as to Welch’s participation in, or giving advice concerning, the investigation of the escape charge beyond his mere presence at the questioning of Drennen. Rather, they resort to asking the court to presume the giving of advice based on inferences which are not reasonable in light of the contrary averments of Welch.
 

 It must likewise be conceded that when Welch advised Eads of Harbolt’s plea agreement and his obligation to cooperate with authorities by providing information of other crimes he was aware of, Welch was not acting in a prosecutorial role with respect to Michael Rhodes, having earlier been replaced by Morgan on the escape charge and the contraband. The same conclusion is to be drawn insofar as Welch is alleged to have offered to drop charges against Knieely in exchange for testimony against Michael Rhodes in the contraband matters. The court accordingly will address the incidents involving Harbolt and Knieely, as well as Welch’s presence during the Drennen interview, under Welch’s alternative defense of qualified immunity.
 

 b.
 
 Prosecutor Morgan.
 
 With respect to Morgan, plaintiffs’ allegations focus on events transpiring after January 1994, when, according to plaintiffs, Morgan directed officer Eads to investigate contraband activities at the jail and told Eads that he should consider Michael Rhodes a suspect. Directing Eads to focus on Michael Rhodes, plaintiffs contend, is not an act for which Morgan is absolutely immune inasmuch as the investigation into contraband activities was only beginning and Morgan’s prosecutorial duties in that matter had not yet commenced. The allegation that Morgan told Eads to focus his investigation on Michael Rhodes is not directly contradicted by Morgan, although he avers generally that “he did not advise any of the West Virginia State Police defendants ... as to how to proceed with the investigation into the transportation of alcohol into the Roane County Jail” and that he did not “direct or conduct the investigation into the transportation of alcohol into the Roane County Jail.” (Morgan Aff. ¶ 17.)
 

 The other activity plaintiffs identify as being conducted by Morgan outside the scope of absolute immunity is his agreement to offer immunity to almost all people interviewed by Eads in the course of the contraband investigation in return for their agreement to testify against Michael Rhodes. Morgan acknowledges that he met with Eads and agreed to “ask the Circuit Court of Roane County for approval of immunity grants in exchange for witness testimony,” and that several jail inmates were offered immunity by Eads for their role, if any, in the transportation of alcohol into the jail in exchange for their testimony. (Morgan Aff. ¶¶ 19-20.) Plaintiffs allege that the offers of immunity were given without prior court approval and, because they were given prior to Morgan’s receipt of Eads’ report of the contraband investigation, the conduct occurred before Morgan assumed his prosecutorial role. Plaintiffs concede, however, that offering grants of immunity does not by itself violate federally protected civil rights. (Pis.’ Opp’n Defs.’ Supp.Mot.Summ.J. at 31 n. 28.) The offers of immunity are nonetheless important, according to plaintiffs, because they demonstrate improper motives on the part of the defendants and are indicative of the unreliability of the witnesses providing evidence against Michael Rhodes in the contraband charges.
 
 (Id.)
 

 As with Welch, it must be acknowledged that if, as plaintiffs allege, Morgan directed Eads to focus his contraband investigation on Michael Rhodes, Morgan was functioning in an investigative rather than a prosecutorial role and he is entitled only to qualified immunity for that conduct. As to Morgan’s offers of immunity in exchange for testimony against Michael Rhodes in contraband activities, plaintiffs have conceded that the offering of immunity does not violate federally protected civil rights. Rather, they argue that the immunity offers are evidence of improper motive and the use of unreliable witnesses in the prosecution of Michael Rhodes on the contraband charges without probable cause. However, a prosecutor’s decision to file charges is protected by absolute immunity even if done vindictively, maliciously, or without adequate investigation.
 
 Myers v. Morris,
 
 810 F.2d 1437,
 
 *1269
 
 1446 (8th Cir.),
 
 cert. denied,
 
 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987), and cases cited therein. Moreover, as the Fourth Circuit Court of Appeals noted in
 
 Carter,
 
 34 F.3d at 263 (citing
 
 Imbler,
 
 424 U.S. at 416, 96 S.Ct. at 988), the presentation of false testimony in the course of a judicial proceeding is an allegation “for which the prosecutor is afforded absolute immunity.” It logically follows that the use of unreliable witnesses is likewise protected by absolute prosecutorial immunity. Thus, it is seen that insofar as plaintiffs rely on Morgan’s allegedly improper motives and offers of immunity as the basis for their allegation that Morgan prosecuted Michael Rhodes on the contraband charges without probable cause and in retaliation for the filing of this action, their Count II section 1983 claim must fail.
 

 2.
 
 Qualified Immunity.
 

 Having concluded that Welch is not entitled to absolute immunity for his presence during the Drennen interview and his alleged role in the incidents involving Harbolt and Knieely and that Morgan is not entitled to absolute immunity for purportedly directing Eads to focus the contraband investigation on Michael Rhodes, the court turns to the prosecutor’s alternative defense of qualified immunity.
 

 Qualified immunity protects officials “as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.”
 
 Anderson v. Creighton,
 
 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The defense of qualified immunity is applicable to state prosecutors performing administrative and investigative functions, as compared to prosecutorial functions, for which they are entitled to absolute immunity.
 
 See Buckley v. Fitzsimmons,
 
 509 U.S. 259, 271-77 & n. 7, 113 S.Ct. 2606, 2615-17 & n. 7, 125 L.Ed.2d 209 (1993). Welch and Morgan are thus entitled to the defense of qualified immunity on plaintiffs’ Count I and II section 1983 claims “insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.”
 
 Harlow v. Fitzgerald,
 
 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The prosecutor defendants having raised the defense of qualified immunity, the burden is on the plaintiffs to show that the defendants violated a clearly established constitutional right.
 
 Bryant v. Muth,
 
 994 F.2d 1082, 1086 (4th Cir.),
 
 cert. denied,
 
 510 U.S. 996, 114 S.Ct. 559, 126 L.Ed.2d 459 (1993). Only if the court determines that plaintiffs have alleged “a violation of a right clearly established at the time the actions occurred should it proceed to determine whether a reasonable person in the official’s position would have known that his actions violated that right.”
 
 DiMeglio v. Haines,
 
 45 F.3d 790, 794-95 n. 1 (4th Cir. 1995).
 

 In considering whether the plaintiff has alleged the violation of a clearly established constitutional right, “the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.”
 
 Wiley v. Doory,
 
 14 F.3d 993, 995 (4th Cir.1994) (quoting
 
 Pritchett v. Alford,
 
 973 F.2d 307, 312 (4th Cir.1992)). That is, the “rights must be clearly established under the particular circumstances confronting the official at the time of the questioned action,”
 
 Slattery v. Rizzo,
 
 939 F.2d 213, 216 (4th Cir.1991) (citing
 
 Anderson,
 
 483 U.S. at 640, 107 S.Ct. at 3039), such that officials are “on notice that their conduct is probably unlawful,”
 
 Gooden v. Howard County, Md.,
 
 954 F.2d 960, 968 (4th Cir.1992)
 
 (en
 
 banc) (quoting
 
 Azeez v. Fairman,
 
 795 F.2d 1296, 1301 (7th Cir.1986)). “[I]f there is a ‘legitimate question’ as to whether an official’s conduct constitutes a constitutional violation, the official is entitled to qualified immunity.”
 
 Wiley,
 
 14 F.3d at 995 (citing
 
 Tarantino v. Baker,
 
 825 F.2d 772, 775 (4th Cir.1987)).
 

 Once it is determined under the enunciated standard that plaintiffs have asserted the violation of a clearly established constitutional right, the inquiry turns to whether a reasonable person in the official’s capacity would have known that his actions violated that right. The test is one of “objective legal reasonableness,”
 
 Harlow,
 
 457 U.S. at 819, 102 S.Ct. at 2739, such that the “manner in which [the clearly established] right applies to the actions of the official
 
 *1270
 
 must also be apparent,”
 
 Maciariello v. Sumner,
 
 973 F.2d 295, 298 (4th Cir.1992),
 
 cert. denied,
 
 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993) (citing
 
 Tarantino,
 
 825 F.2d at 774-75). “Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.”
 
 Maciariello,
 
 973 F.2d at 298.
 

 Although Counts I and II of plaintiffs’ complaint allege that the defendants violated Michael Rhodes’s constitutionally protected rights to security of person, to substantive and procedural due process, and to equal protection, plaintiffs later acknowledge that the essence of their Count I claim is the allegation that Michael Rhodes was charged and prosecuted, without probable cause, for assisting in the escape of prisoners, and that the substance of their Count II claim is that Michael Rhodes was targeted, charged and prosecuted, without probable cause and for a retaliatory purpose, with allowing contraband to enter the jail.
 

 There is a clearly established constitutional right to be free from arrest and prosecution without probable cause.
 
 E.g., Pritchett v. Alford,
 
 973 F.2d 307 (4th Cir. 1992). It may also be conceded that there is a federally protected right to be free from arrest and prosecution in retaliation for the filing of a lawsuit. However, as discussed,
 
 supra,
 
 page 1266, Welch and Morgan are absolutely immune for their decision to initiate and prosecute the escape and contraband charges against Michael Rhodes. Consequently, Welch and Morgan are entitled to summary judgment in their favor on the section 1983 claims unless plaintiffs can demonstrate that the acts for which Welch and Morgan are not absolutely immune violate a clearly established constitutional or federal statutory right of which a reasonable person would have known.
 

 Plaintiffs have faffed to identify, by reference to the United States Constitution, federal statutes, or case law, any federally protected right of a potential criminal defendant [Rhodes] to have an investigatory interview of a participant in the crime [Drennen] conducted outside the presence of a prosecuting attorney. The court accordingly concludes that Welch did not violate a clearly established constitutional right of Michael Rhodes by being present at the investigatory interview of Drennen. Similarly, plaintiffs have failed to demonstrate that Morgan violated a clearly established right when he told Eads, on the basis of the escape investigation report, that the contraband investigation should focus on Michael Rhodes.
 

 With respect to the remaining section 1983 allegations against the prosecutor defendants, those being Welch’s role in the incidents involving Harbolt and Knieely, it is recognized that “coercing witnesses ... is a genuine constitutional wrong.”
 
 Buckley v. Fitzsimmons,
 
 20 F.3d 789, 794 (7th Cir. 1994),
 
 on remand from
 
 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993),
 
 cert. denied,
 
 — U.S. -, 115 S.Ct. 740, 130 L.Ed.2d 642 (1995). However, it is the witness, not the criminal defendant, who suffers the constitutional injury when the witness is coerced into making a statement.
 
 Buckley,
 
 20 F.3d at 794-95. As the Seventh Circuit Court of Appeals explained on remand in
 
 Buckley,
 
 obtaining a coerced statement is an act not protected by immunity, but it does not violate a right belonging to the section 1983 plaintiff.
 
 Id.
 
 at 795. Using the coerced statement could violate the section 1983 plaintiff’s rights, but that act would be protected by absolute immunity.
 
 Id.
 
 On the reasoning of the decision in
 
 Buckley
 
 on remand, the court concludes that plaintiffs have faffed to meet their burden of proving that Welch violated a clearly established right of Michael Rhodes either by advising Eads of information Eads then used to allegedly coerce a statement from Harbolt or by allegedly coercing Knieely into implicating Michael Rhodes in contraband activities in exchange for the dismissal of charges against him.
 

 From the above, it is seen that either absolute or qualified immunity protects the prosecutor defendants, Welch and Morgan, in the acts which plaintiffs identify as forming the basis for their section 1983 claims against those defendant. Moreover, there is no basis for finding that Michael Rhodes is threatened with future acts such that prospective relief is warranted. Welch and Morgan are
 
 *1271
 
 accordingly entitled to summary judgment in their favor on Count I and Count II.
 

 8.
 
 Count III Conspiracy Claim against the Prosecutor Defendants.
 

 Plaintiffs have not identified which of the three subsections of Title 42, United States Code, section 1985, they rely on to support their conspiracy claim. Subsection 1985(1), by its terms, applies only to conspiracies against officers of the United States or those about to take office,
 
 Armstrong v. School Dish of Philadelphia,
 
 597 F.Supp. 1309, 1314 (E.D.Pa.1984), and thus is not applicable here. Subsection 1985(3) provides relief only when the conspiracy is designed to deprive a person of equal protection of the laws, or of equal privileges and immunities under the laws. Consequently, subsection 1985(3) concerns only those conspiracies which are motivated by some racial or other class-based “invidiously discriminatory animus.”
 
 Haverstick Enterprises, Inc. v. Financial Fed. Credit, Inc.,
 
 32 F.3d 989, 993-94 (6th Cir.1994) (quoting
 
 United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott,
 
 463 U.S. 825, 829, 103 S.Ct. 3352, 3356-57, 77 L.Ed.2d 1049 (1983));
 
 Tilton v. Richardson,
 
 6 F.3d 683, 686 (10th Cir.1993),
 
 cert. denied,
 
 510 U.S. 1093, 114 S.Ct. 925, 127 L.Ed.2d 218 (1994), (citing
 
 Griffin v. Breckenridge,
 
 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798-99, 29 L.Ed.2d 338 (1971)). There being no allegation that the defendants were motivated by a class-based animus, subsection 1985(3) does not provide a basis for plaintiffs’ conspiracy claim.
 

 Subsection 1985(2) contains two clauses,
 
 Brever v. Rockwell Int’l Corp.,
 
 40 F.3d 1119, 1126 (10th Cir.1994), and multiple phrases, each of which creates a distinct cause of action. The first clause pertains to conspiracies involving access to federal courts.
 
 Portman v. County of Santa Clara,
 
 995 F.2d 898, 908-09 (9th Cir.1993). The second clause concerns conspiracies directed to access to state or territorial courts and, because of its “equal protection” language, like subsection 1985(3), requires an allegation of class-based animus.
 
 Portman,
 
 995 F.2d at 909;
 
 Bradt v. Smith,
 
 634 F.2d 796, 801 (5th Cir.1981),
 
 cert. denied,
 
 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 106 (1981). There being no allegation of class-based animus, plaintiffs cannot rely on the last clause of subsection 1985(2) to support their conspiracy claim.
 

 Returning to the first clause of subsection 1985(2), which concerns access to federal courts, there are four phrases. The first phrase pertains to conspiracies “to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or irom testifying to any matter pending therein, freely, fully, and truthfully.” The second phrase relates to conspiracies “to injure such party or witness in his person or property on account of his having so attended or testified.” Phrase three involves conspiracies “to influence the verdict, presentment, or indictment of any grand or petit juror in any such court.” The fourth and final phrase relating to access to federal courts applies to conspiracies “to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror.”
 

 Phrases three and four are not applicable to the matters presented to the Roane County grand jury inasmuch as they pertain only to federal grand jurors.
 
 See Portman,
 
 995 F.2d at 908-09. What remains are the first and second phrases, which apply,
 
 inter alia,
 
 to conspiracies to deter a party from attending a federal court and conspiracies to injure a party on account of his having so attended. Assuming that the words “attending” and “attended” can be interpreted as including the filing of a lawsuit in federal court,
 
 compare Kimble v. D.J. McDuffy, Inc.,
 
 648 F.2d 340, 348 (5th Cir.) (en banc),
 
 cert. denied,
 
 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981) (only a party’s physical presence while attending or testifying in federal court is protected by § 1985(2))
 
 with Wright v. No Skiter Inc.,
 
 774 F.2d 422, 425-26 (10th Cir.1985) (for purposes of § 1985(2), an individual is deemed to have attended a federal court when he files a lawsuit), plaintiffs’ conspiracy claim must nonetheless fail inasmuch as it rests on mere conclusory allegations that the prosecutor defendants conspired with each other, or with
 
 *1272
 
 any of the police officer defendants, to deter plaintiffs from filing this action, the only arguable basis for a conspiracy claim under section 1985.
 

 Plaintiffs rely solely on the timing of events to inferentially support their conspiracy theory. On January 27, 1994, Michael Rhodes announced publicly that he intended to bring suit based on the escape prosecution. Eads’ report of the contraband investigation was not prepared until March 10, 1994, and Michael Rhodes was not indicted on the contraband charges until May 25, 1994, more than two months after this action was filed. However, plaintiffs concede that Morgan was appointed special prosecutor for the contraband investigation on December 22, 1993, and Eads avers that he conducted his first interview relating to the contraband investigation on January 21, 1994. Consequently, the contraband investigation was set in motion before Michael Rhodes’ public announcement of his intention to bring this suit. It is also clear based on Smithers’ 1993 report, that inmate statements taken a year earlier during the escape investigation implicated Michael Rhodes in contraband activities. Consequently, not even the timing of events lends credible support to plaintiffs’ contention that the defendants conspired to deter Michael Rhodes — by intimidation and the threat of prosecution on contraband charges — from filing this action.
 

 Moreover, there is no indication that prosecutor Welch participated in the decision to pursue the contraband investigation and, as to prosecutor Morgan, insofar as it is alleged that he participated in a conspiracy by initiating a criminal prosecution against Michael Rhodes on the contraband charges, he is entitled to absolute prosecutorial immunity on the section 1985(2) claim as well as the section 1983 claim.
 
 Snelling v. Westhoff,
 
 972 F.2d 199 (8th Cir.1992),
 
 cert. denied,
 
 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 132 (1993);
 
 see also Carter,
 
 34 F.3d at 263 (prosecutor entitled to absolute immunity on claim that he was involved in a conspiracy to present false testimony).
 

 The record being completely devoid of any evidence that Welch and Morgan conspired between themselves or with any of the police officer defendants to pursue the contraband charges against Michael Rhodes’ to deter him from filing this action, or that there is a threat of future like action against Michael Rhodes, Welch and Morgan are also entitled to summary judgment in their favor on the Count III conspiracy claim.
 

 C.
 
 Police Officer Defendants’ Motion for Summary Judgment.
 

 In the police officer defendants’ motion and supplemental motion for summary judgment, Smithers, Eads and Skeen first contend that they are entitled to qualified immunity on the Count I and Count II section 1983 claims because they did not violate a clearly established constitutional right of Michael Rhodes, there being probable cause for bringing the escape and contraband charges as indicated by the grand jury indictments. As part of then- qualified immunity defense, they also assert that under the circumstances of their investigation, it was reasonable for them to believe that there was probable cause to support the charges brought against Michael Rhodes. To the extent that Count II rests on the additional allegation that Michael Rhodes was indicted and tried on the contraband charges in retaliation for the filing of this lawsuit, the police officer defendants maintain that there is no merit to the claim inasmuch as most of the investigation of the contraband activities occurred prior to the commencement of this action and that their motivation in bringing the contraband charges is irrelevant if probable cause for the charge existed. Officer Skeen additionally maintains that he did not give false and misleading testimony before the grand jury that indicted Michael Rhodes on the escape charge and, alternatively, that he is entitled to absolute immunity for any false testimony he is found to have given before the grand jury.
 

 As to the Count III conspiracy claim, the police officer defendants allege that plaintiffs have made only conclusory allegations of a conspiracy without reference to material facts supporting the conspiracy claim. The Count TV malicious prosecution claims, they contend, must fail inasmuch as probable cause for the prosecutions existed and there
 
 *1273
 
 is no showing of malice. As to the Count V claim of Michael Rhodes for intentional infliction of emotional distress and the Count VI intentional infliction of emotional distress claim of Danita Rhodes, the police officer defendants maintain that there is no showing of outrageous conduct on their behalf.
 

 1.
 
 Qualified Immunity.
 

 As discussed,
 
 supra,
 
 pages 1269-1270, the court’s analysis of the police officer defendants’ asserted defense of qualified immunity with respect to plaintiffs’ section 1983 claims is to focus initially on whether plaintiffs have alleged that the officers violated a clearly established constitutional right. • The general constitutional right identified by plaintiffs in their section 1983 claims is the right to be free from prosecution without probable cause.
 
 [6]
 

 The Fourth Circuit Court of Appeals is among those circuit courts which hold that wrongful or malicious prosecution is actionable against a police officer under section 1983 if the plaintiff has suffered a deprivation of the liberty interests protected by the Fourth Amendment.
 
 [7]
 

 Goodwin v. Metts,
 
 885 F.2d 157, 163 (4th Cir.1989),
 
 cert. denied sub nom, Maxwell v. Goodwin,
 
 494 U.S. 1081, 110 S.Ct. 1812, 108 L.Ed.2d 942 (1990);
 
 see also Wilkes v. Young,
 
 28 F.3d 1362 (4th Cir.1994),
 
 cert. denied,
 
 — U.S. -, 115 S.Ct. 1103, 130 L.Ed.2d 1069 (1995). The liberty interest identified in
 
 Goodwin
 
 is the right to be free from prosecution without probable cause.
 
 Goodwin,
 
 885 F.2d at 163-64. In particular,
 
 Goodwin
 
 established the duty of a police officer to disclose exculpatory evidence to the prosecuting attorney for an independent assessment of whether there is probable cause to prosecute inasmuch as a reasonable officer would know that exculpatory evidence would make the existence of probable cause less likely.
 
 Id.
 
 at 163-64.
 

 Other courts similarly hold that police officers may be liable under section 1983 for prosecution without probable cause if they fail to disclose exculpatory evidence to prosecutors, make false or misleading reports to the prosecutor, omit material information from the reports, or otherwise interfere with the prosecutor’s ability to exercise independent judgment.
 
 Mahoney v. Kesery,
 
 976 F.2d 1054, 1061 (7th Cir.1992) (officer may be liable under § 1983 if he procures a prosecution by lying to the prosecutor);
 
 Sanders v. English,
 
 950 F.2d 1152, 1162-64 (5th Cir. 1992) (deliberate concealment or deliberate failure to disclose patently exculpatory evidence to prosecutor exposes officer to liability for malicious prosecution under § 1983);
 
 Barlow v. Ground,
 
 943 F.2d 1132, 1136-37
 
 *1274
 
 (9th Cir.1991),
 
 cert. denied,
 
 505 U.S. 1206, 112 S.Ct. 2995, 120 L.Ed.2d 872 (1992) (officer may be liable under § 1983 where his omission of crucial information prevented prosecutor from making independent judgment);
 
 Robinson v. Maruffi,
 
 895 F.2d 649, 655 (10th Cir.1990) (officer may be liable under § 1983 for malicious prosecution if he purposefully concealed and misrepresented material facts which may have influenced prosecutor’s decision to prosecute);
 
 McMillian v. Johnson,
 
 878 F.Supp. 1473, 1502-03 (M.D.Ala.1995) (police officers have a clearly established duty to turn exculpatory evidence over to the prosecutor for disclosure to the defendant).
 

 Although the converse principle is variously stated, it is equally well established that where an officer presents all relevant probable cause evidence to an intermediary, such as a prosecutor, a grand jury, or a magistrate, the intermediary’s independent decision to seek a warrant, issue a warrant, or return an indictment breaks the causal chain and insulates the officer from a section 1983 claim based on lack of probable cause for an arrest or prosecution.
 
 Eubanks v. Gerwen,
 
 40 F.3d 1157, 1160-61 (11th Cir. 1994) (officers not liable on § 1983 false arrest and malicious prosecution claims when they act on seemingly reliable tip, conduct an investigation, and turn over all relevant information to prosecuting attorney who then makes decision whether to prosecute);
 
 Walker v. City of New York,
 
 974 F.2d 293, 299 (2d Cir.1992),
 
 cert. denied,
 
 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993) (with respect to exculpatory evidence, officer’s only duty is the disclosure of that evidence to the prosecutor);
 
 Robinson,
 
 895 F.2d at 655-56 (actions of prosecutor and grand jury cause an intervening break in officer’s conduct unless officer deliberately supplied misleading information that influenced the intermediary’s decision to proceed with the prosecution);
 
 Borunda v. Richmond,
 
 885 F.2d 1384, 1390 (9th Cir.1988) (prosecutor is presumed to have made an independent determination that probable cause for an arrest exists, a presumption which shields the officer from an unlawful arrest claim unless rebutted by “evidence that the investigating officers made material omissions or gave false information to the prosecutor”);
 
 Barts v. Joyner,
 
 865 F.2d 1187, 1195-97 (11th Cir.1989),
 
 cert. denied,
 
 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989) (intervening acts of prosecutor and grand jury break the chain of causation and shield the officer unless § 1983 plaintiff claiming false arrest and prosecution can show that intervening acts resulted from deception or undue pressure of officers);
 
 Jones v. City of Chicago,
 
 856 F.2d 985, 993-94 (7th Cir.1988) (intervening decision of prosecutor or grand jury breaks causal connection and shields officer from liability under § 1983 unless he concealed or misrepresented facts);
 
 White v. Frank,
 
 855 F.2d 956, 961-62 (2d Cir.1988) (indictment by a grand jury is “generally considered prima facie evidence of probable cause in a subsequent civil action for malicious prosecution,” a presumption which may be rebutted by proof that the defendant “misrepresented, withheld, or falsified evidence”);
 
 Hand v. Gary,
 
 838 F.2d 1420, 1427-28 (5th Cir.1988) (decision of grand jury or other independent intermediary insulates the officer from liability if no relevant information is withheld);
 
 Smiddy v. Varney,
 
 803 F.2d 1469 (9th Cir.1986),
 
 modified,
 
 811 F.2d 504 (9th Cir.1987) (there is a rebuttable presumption that prosecutor exercising independent judgment regarding existence of probable cause breaks the causal connection and insulates police officer from liability under § 1983 for wrongful prosecution unless it can be shown that officers knowingly submitted false information or otherwise wrongfully persuaded the prosecutor to act contrary to his independent judgment);
 
 see Smith v. Gonzales,
 
 670 F.2d 522, 526-27 (5th Cir.1982),
 
 cert. denied,
 
 459 U.S. 1005, 103 S.Ct. 361, 74 L.Ed.2d 397 (1982) (police officer insulated from § 1983 false arrest claim when district attorney heard evidence from the complaining witness and applied for arrest warrant);
 
 see also Carter v. Burch,
 
 34 F.3d 257, 264 (4th Cir.1994),
 
 cert. denied,
 
 — U.S. -, 115 S.Ct. 1101, 130 L.Ed.2d 1068 (1995) (stating in dicta that a police captain who received exculpatory evidence was only required to turn it over to the prosecutor or investigating officers and consequently, withholding the evidence from the defendant was not the proximate cause of
 
 *1275
 
 his section 1983 injury);
 
 Kelly v. Curtis,
 
 21 F.3d 1544, 1550-53 (11th Cir.1994) (police officer has no clearly established duty to turn over exculpatory evidence to prosecutor when officer has reason to believe that the prosecutor already has the evidence).
 

 On the basis of the cited authority, it may be said that there is a clearly established constitutional right not to be prosecuted without probable cause. Nonetheless, in that context, the only particularized duty of an investigative officer who participates in the prosecution is the duty to turn over all relevant information, especially information of an exculpatory nature, to a prosecutor or grand jury for an independent assessment of the probable cause evidence. The court accordingly assesses the conduct of the police officer defendants in the light of that clearly established duty and corresponding right of Michael Rhodes.
 

 2.
 
 Count I Escape Prosecution.
 

 In their motion for summary judgment with respect to Count I, officers Eads, Smithers and Skeen first assert that they are not liable for their participation in the escape prosecution inasmuch as there was probable cause for bringing the escape charge, as indicated by the grand jury indictment. Plaintiffs, in response, point to several factors they contend support a finding of lack of probable cause. As an initial matter, they contend that no objectively reasonable officer would have relied on the affidavit of escapee Drennen, (Drennen Aff., Ex. H., Officer Defs.’ Mem.Supp.Mot.Summ.J.), in which he avers that Michael Rhodes assisted in the escape by causing the door of the recreation room to be unlocked on the day of the escape. Contrary to the officers’ assertions that Drennen’s statement was corroborated by a polygraph examination and statements of others indicating that Michael Rhodes agreed to assist in the escape, plaintiffs maintain that there were other witnesses who said that although Rhodes indicated a willingness to help in the escape, he never did. Plaintiffs also maintain that Drennen’s statement was not trustworthy because Drennen was motivated to implicate Michael Rhodes because Rhodes was responsible for a shake-down of inmates two days earlier.
 

 Plaintiffs next point to a potentially exculpatory statement given by inmate trustee Kenneth Craft in which Craft confessed to providing a key to Drennen. Craft’s confession, according to plaintiffs, was more trustworthy than Drennen’s statement implicating Michael Rhodes and should not have been disregarded by the officers as undependable.
 

 Plaintiffs also recite a number of areas in which they contend that the police officers failed to conduct an adequate investigation. According to plaintiffs, the officers did not verify that Michael Rhodes had access to the recreation door key or undertake to determine when the door was last checked; they did not interview the officers on duty at the jail at the time of the escape or those on duty during the shift immediately before the escape; they did not interview five persons present in the recreation room at the time of the escape; they did not determine the source of the information given to Chief Deputy Cole, which information was the basis of Cole’s statement that Michael Rhodes was the person likely responsible for unlocking the door; they did not interview fourteen of the eighteen inmates incarcerated at the time of the escape; and they did not interview the Sheriff or review his logs concerning the escape.
 

 As a final matter with respect to lack of probable cause on the escape charge, plaintiffs contend that officer Skeen — and through him, the other police officer defendants— participated in procuring a prosecution without probable cause by concealing facts before the grand jury and by providing them with misleading information. In particular, plaintiffs point to Skeen’s testimony that the escape investigation disclosed no indication that the escapees had been given a key. In light of Craft’s confession that he supplied the escapees with a key, plaintiffs assert that Skeen actively misled and concealed testimony from the grand jury by testifying that there was no indication that the escapees had been given a key. Plaintiffs also rely on the referenced testimony of Skeen to rebut the police officer defendants’ argument that the grand jury indictment shields them from plaintiffs’ claim that there was no probable cause for the escape charges. Moreover, say
 
 *1276
 
 plaintiffs, in reliance on
 
 White v. Frank,
 
 855 F.2d 956, 961 (2d Cir.1988), to the extent that Skeen misled the grand jury, he is not protected by witness immunity inasmuch as his role was that of a complaining witness.
 

 With respect to each officer’s involvement in the events referenced by plaintiffs to show lack of probable cause, it is seen that Smithers was the officer placed in charge of the investigation. He participated personally in the investigation to the extent of inspecting the recreation room door through which the inmates escaped and interviewing several people, including Deputy Eads, the officer on duty when the escape occurred; Deputy Cole, who identified Michael Rhodes as the likely suspect in having opened the recreation room door; escapee Drennen; and plaintiff Michael Rhodes. (Smithers Aff., Officer Defs.’ Mot.Summ. J., Ex. C.)
 

 On three separate occasions, Smithers also interviewed Kenny Craft, the inmate trustee who had access to the recreation room on the day of the escape. Craft was first interviewed on January 29,1993, at which time he denied involvement in the escape. (Smithers Aff. ¶¶ 29-30.) A polygraph examination was administered and interpreted as showing deception. (Smithers Aff. ¶¶ 31-32.) In a post-examination interview, Craft said that he left a key for Drennen to use in an escape. (Smithers Aff. ¶ 33.) Another polygraph examination was administered, with the interpretation indicating no deception except for one answer. (Smithers Aff. ¶ 34-35.) After Drennen was interviewed and denied that Craft was involved, Craft was interrogated a third time and gave answers contradicting his two earlier statements. (Smithers Aff. ¶¶ 59-61.) Smithers thus avers that “Craft’s statements throughout this investigation seemed unbelievable, inconsistent, and unreliable.” (Smithers Aff. ¶ 62.)
 

 In addition to participating in the investigation, Smithers received reports of interviews taken by others and prepared the March 9, 1993, report of the investigation of Michael Rhodes, BK-5063, which was given to prosecutor Welch. With respect to the matters raised by plaintiffs as refuting a showing of probable cause, Smithers’ report contains a section captioned “LIST OF EXHIBITS.” In that section are listed,
 
 inter alia,
 
 the statement of Drennen, summarized as revealing Michael Rhodes as permitting Drennen’s escape; the statement of Craft, summarized as saying that Michael Rhodes participated in contraband activities at the jail; and reports of polygraph examinations of unnamed persons. (Officer Defs.’ Ex. I.) In sections captioned “WITNESSES” and “CONFESSIONS AND STATEMENTS,” reference is made to “attached report BK-5065.”
 

 Attached Report BK-5065, also prepared by Smithers on March 9, 1993, is a report of the investigation of Russell Garrett and Rusty Garrett, his son, the two other individuals charged with aiding in the escape. In the. Garrett report, Smithers describes his January 29, 1993, interview with Craft in which Craft stated that he had been approached by Drennen and Chad Harbolt about assisting them in an escape. (Report BK-5065 at 8-9.) The report also indicates that Craft had trustee duties in the recreation room on the date of the escape and that, on the day of the interview, Craft had a deputy’s set of keys which included a key that would unlock the door through which the escape occurred. (Report BK-5065 at 8-9.) The note concludes that Craft would have had every opportunity to unlock the door.
 
 (Id.)
 
 The report continues by summarizing the polygraph examination revealing deception, a post-examination statement in which Craft said that Drennen had offered him $7,000 if he would provide a key to the recreation room door, and a later statement changing the amount offered from $7,000 to $700. Copies of two statements of Craft are attached to the report. One is undated and with respect to the escape says only that Harbolt and Drennen had approached Craft about three weeks earlier for assistance in helping them escape, that Craft told Michael Rhodes about their request, and that there were no other occasions where he had been asked for help in an escape. The other statement, dated January 29, 1993, says that the earlier statement wasn’t completely truthful, that Drennen had approached him for help in exchange for $7,000, and that he had found a key to the recreation room door
 
 *1277
 
 and left it in a hiding place for Drennen several days before the actual escape. The report does not include a statement showing that Craft changed his story about the amount Drennen offered him for help in the escape.
 

 Copies of the two polygraph examinations administered to Craft on January 29, 1993, are also attached to the report. The first polygraph was administered after Craft’s initial statement denying any involvement in the escape. The report indicates that Craft gave deceptive answers in response to questions about whether he helped Drennen and Fredrick escape; whether he ever unlocked the door of the recreation room; whether he ever gave anyone a key to any of the jail doors; and whether he knew for sure who helped Drennen and Fredrick escape. In a post-test interview, Craft first denied making deceptive statements, then began giving contradicting statements, and finally implicated himself in the escape by confessing that he located a key, left it in the recreation room, and told Drennen where it was. He also stated that on the day of the escape, while standing near a window, he saw Fredrick run out the recreation room door.
 

 A second polygraph was administered to try to ascertain the validity of Craft’s confession. He was asked,
 
 inter alia,
 
 whether he planned to lie; whether he told the truth about hiding the key; whether he knew anyone else who helped with the escape; whether he saw Fredrick escaping; and whether he was withholding information about the escape. In each instance, including whether he told the truth about hiding the key and seeing Fredrick escape, Craft answered in the negative. The polygraph administrator interpreted the results as being non-deceptive, except for a reaction to the question about whether Craft planned to lie on the test.
 

 The Garrett report also summarizes the March 4, 1993, interview with Michael Rhodes in which he stated that Drennen had asked for his help in an escape but denied that he had participated in any way. (BK-5065 at 14.) The report also states that Rhodes failed a polygraph examination and, in particular, gave a deceptive answer to the question “Did you unlock the recreation room door so Drennen could escape?” (BK-5065 at 14.)
 

 Officer Eads was assigned to assist Smithers in the escape investigation. With respect to the matters pertinent to the prosecution of Michael Rhodes, he assisted Smithers in examining the door to the recreation room and concluding that it must have been opened with a key. (Eads Aff. ¶¶8-10.) He was also present with Smithers during the interviews of Drennen, Craft, and Michael Rhodes. There is no indication that he did not provide Smithers with all other information he received in the course of the investigation or that Smithers did not include all of the information gathered by Eads in his various reports of the escape investigation.
 

 Trooper Skeen also participated in the escape investigation. Insofar as the investigation concerned the lack of probable cause matters plaintiffs raise in opposition to the motion for summary judgment, it is seen that Skeen was the police officer who presented the results of the investigation to the grand jury. Although plaintiffs contend that Skeen gave misleading testimony before the grand jury, there is no indication that Skeen did not accurately report the results of his investigation to Smithers or that Smithers did not accurately communicate that information to prosecutor Welch in his reports on the escape matters.
 

 Having reviewed the contents of Smithers’ report of the investigation of Michael Rhodes, BK-5063, and his report of the investigation of the Garretts, BK-5065, it is apparent that the report contains all of the information relevant to a finding of probable cause that Michael Rhodes assisted in the escape of a prisoner. Significantly, the reports contained not only summaries of statements and polygraph results, but the supporting documents as well. Thus, there is no dispute but that the Smithers reports contained all relevant probable cause information. Likewise, plaintiffs do not contend that the entirety of the reports and supporting documentation were not presented to prosecutor Welch for a determination of whether or not to seek an indictment. There is no indication that the police officers concealed
 
 *1278
 
 or failed to disclose exculpatory information, or that the reports knowingly contained false information, or that they were deliberately misleading. The police officer defendants thus fulfilled their duty of providing all relevant probable cause information to prosecutor Welch. Prosecutor Welch having made an independent decision to proceed before the grand jury, the police officer defendants are shielded from liability for that decision. Moreover, inasmuch as there is no suggestion that Smithers and Eads personally participated in the escape prosecution beyond conducting the investigation and there being no evidence that they encouraged, authorized, approved or knowingly acquiesced in any wrongful behavior of Skeen before the grand jury, they cannot be liable for the wrongful prosecution, if any, that occurred after prosecutor Welch made the decision to present the escape investigation report to the grand jury.
 
 See, e.g., Alioto v. City of Shively, Ky.,
 
 835 F.2d 1173, 1175 (6th Cir.1987). Inasmuch as there is no basis for finding a threat of future wrongful conduct by them, officers Smithers and Eads are entitled to summary judgment in their favor on Count I of the complaint.
 

 What remains of the Count I claims against the police officers is the allegation that Skeen misled the grand jury when he testified that there was no indication that the escapees were given a key. If Skeen presented false information to the grand jury and is not protected by the absolute immunity afforded witnesses in judicial proceedings, he may yet be liable for his continuing participation in the prosecution of Michael Rhodes inasmuch as it could be said that he thereby interfered with the grand jury’s independent assessment of the probable cause evidence.
 
 See, e.g., Jones,
 
 856 F.2d at 994.
 

 Plaintiffs do not contend that Skeen had an affirmative duty to provide exculpatory information to the grand jury. (Pis.’ Mem. Opp’n Officer Defs.’ Mot.Summ.J., unnumbered p. 18.) Rather, they assert that he “actively mislead and concealed facts from the grand jury when those facts had been
 
 specifically requested.” (Id.
 
 at unnumbered 19) (emphasis in original). The particular colloquy relied on by plaintiffs to support their allegation that Skeen misled the grand jury occurred between Skeen and a grand juror in the following exchange:
 

 JUROR: Did they ever find the missing key?
 

 [SKEEN]: As far as one being missing, I don’t know that there is any indication that one actually came up missing.
 

 JUROR: In other words, you don’t think it was taken off and given to them and they used it. You think it was just jimmied to where they could get out when they wanted to?
 

 [SKEEN]: From the information we got off of them, there’s no indication that they were given a key. It’s just simply the lock was disengaged for them. To the best of my knowledge, we never recovered any key from them or found one in any — laying on the street or anything like that.
 

 Plaintiffs focus on the statement “there’s no indication that they were given a key,” contending that the statement is false, or at least misleading, given the confession by Craft that he left a key for the escapees. Assuming that Skeen had knowledge of Craft’s confession
 
 [8]
 
 , his response to the grand juror cannot be considered false inasmuch as he relates his answer to “information we got off of them,” meaning the escapees. Neither escapee ever indicated that they were given a key. Moreover, a police officer in Skeen’s position could reasonably have disbelieved Craft’s confession inasmuch as the second polygraph examination showed no deception when Craft answered in the negative the question about whether he had earlier told the truth about hiding the key. Given the unresolved inconsistencies in Craft’s statements and polygraph examination results, a reasonable trier of fact could not conclude that Skeen deliberately misled the grand jury to the prejudice of Michael Rhodes when, in response to a question about whether he thought a key had been given to the escapees, he replied that on the
 
 *1279
 
 basis of the information received from the escapees, “there’s no indication that they were given a key.”
 

 Furthermore, even assuming
 
 arguendo
 
 that the testimony was misleading, most federal courts addressing the issue hold that witnesses, including investigating officers, are absolutely immune from suit under section 1983 based on testimony before a grand jury.
 
 Kelly v. Curtis,
 
 21 F.3d 1544, 1553 (11th Cir.1994) (citing
 
 Strength v. Hubert,
 
 854 F.2d 421, 424-25 (11th Cir.1988) (police officer testifying before grand jury has absolute immunity from § 1983 malicious prosecution suit));
 
 Alioto v. City of Shively, Ky.,
 
 835 F.2d 1173, 1174 (6th Cir.1987) (all witnesses, including police officers, have absolute immunity from § 1983 suit based on false grand jury testimony);
 
 Kompare v. Stein,
 
 801 F.2d 883 (7th Cir.1986) (all witnesses have absolute immunity from § 1983 suit based on testimony before a grand jury);
 
 San Filippo v. U.S. Trust Co. of N.Y., Inc.,
 
 737 F.2d 246, 254 (2d Cir.1984),
 
 cert. denied,
 
 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985) (citing
 
 Kincaid v. Eberle,
 
 712 F.2d 1023 (7th Cir.1993) (stating in dicta that witnesses are entitled to absolute immunity from section 1983 suit based on grand jury testimony));
 
 cf. Little v. City of Seattle,
 
 863 F.2d 681, 684 (9th Cir.1988) (Department of Labor investigator absolutely immune from liability based on grand jury testimony);
 
 Briggs v. Goodwin,
 
 712 F.2d 1444, 1448-49 (D.C.Cir.1983),
 
 cert. denied,
 
 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984) (prosecutor testifying in investigative capacity at grand jury motion hearing entitled to absolute immunity in
 
 Bivens
 
 action based on alleged misrepresentation).
 
 But see Anthony v. Baker,
 
 955 F.2d 1395, 1397-1401 (10th Cir.1992) (police officer who testifies before grand jury as a complaining witness, rather than a lay witness, not entitled to absolute immunity from § 1983 malicious prosecution action);
 
 Wheeler v. Cosden Oil & Chemical Co.,
 
 734 F.2d 254, 261 (5th Cir.1984) (no absolute immunity from § 1983 malicious prosecution action for false testimony at probable cause hearing).
 

 If not absolutely immune from a section 1983 malicious prosecution action based on his allegedly misleading testimony before the grand jury, Skeen would nonetheless be entitled to summary judgment in his favor on Count I, inasmuch as the grand jury could have found probable cause to indict Michael Rhodes on the escape charge even if Skeen had advised them of Craft’s uncorroborated and somewhat inconsistent confession that he left a key for the escapees to use.
 
 See Amato v. City of Richmond,
 
 875 F.Supp. 1124, 1150 (E.D.Va.1994).
 

 3.
 
 Count II Contraband Prosecution.
 

 In Count II, Eads is the only police officer defendant. As with respect to Count I, he contends that he is entitled to summary judgment in his favor on Count II because there was probable cause to indict and try Michael Rhodes on the contraband charges. In opposing summary judgment, plaintiffs again assert a lack of probable cause based on the manner in which the contraband investigation was conducted. According to plaintiffs, there is no corroborating information to support the charges against Rhodes; witnesses gave contradictory statements; the witnesses, most of whom were inmates or members of inmates’ families, are untrustworthy because they had personal reasons for wanting to implicate Michael Rhodes and because they gave statements implicating Michael Rhodes under promises of immunity; and not everyone who might have had important information was interviewed.
 

 Significantly, in responding to the motion for summary judgment, there is no contention that Eads failed to present any of the results of his contraband investigation to prosecutor Morgan. Nor is there any assertion that Eads did not fully present the results of his investigation to the grand jury that indicted Michael Rhodes on three charges of allowing alcoholic substances to be brought into the jail. There being no basis for finding that Eads failed to make a complete disclosure of the results of his contraband investigation to prosecutor Morgan, or that he withheld or misrepresented relevant information in his testimony before the grand jury, the court concludes that the intervening and independent acts of the prosecutor and the grand jury shield Eads from liability on the claim that he participated in the indict
 
 *1280
 
 ment and prosecution of Michael Rhodes without probable cause to support the contraband charges.
 

 Insofar as plaintiffs claim that Eads participated in the contraband prosecution in retaliation for the filing of this action, they have come forth with no evidence other than argument and speculation to support that claim. As earlier indicated,
 
 supra,
 
 pages 1271-1272, the 1993 escape investigation implicated Michael Rhodes in contraband activities, the contraband investigation was initiated at the behest of prosecutor Morgan before Rhodes made known his plans to file this suit, and Eads began his series of interviews before that date. Once the investigation was commenced, it was understandably pursued to completion notwithstanding Rhodes’ threat of suit and his actual filing of suit days before Eads prepared his final report for evaluation by prosecutor Morgan. Plaintiffs have failed to demonstrate a retaliatory motive on the part of Eads. Nor have they shown that they are threatened by future wrongful conduct by Eads. Eads is entitled to summary judgment in his favor on the entirety of Count II.
 

 4.
 
 Count III Conspiracy.
 

 Having concluded,
 
 supra,
 
 pages 1270-1272, that the only basis for plaintiffs’ conspiracy claim is that portion of section 1985(2) which relates to conspiracies to deter federal court attendance, and there being no allegation that Smithers and Skeen were involved in the contraband investigation, the deterrent conduct relied on by plaintiffs, Smithers and Skeen are entitled to summary judgment in their favor on Count III. Inasmuch as the conspiracy count fails against Welch, Morgan, Smithers and Skeen, it cannot stand alone against Eads. Eads is also entitled to summary judgment in his favor on the Count III conspiracy claim.
 

 5.
 
 Count IV Malicious Prosecution.
 

 In order to prevail on their state law claims that Michael Rhodes was maliciously prosecuted on the escape and contraband charges, plaintiffs must prove with respect to each prosecution:
 

 (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiffs discharge;
 

 (2) that it was caused or procured by defendant;
 

 (3) that it was without probable cause; and
 

 (4) that it was malicious.
 

 Pote v. Jarrell,
 
 186 W.Va. 369, 412 S.E.2d 770, 774 (1991). On each element, plaintiffs must overcome the “presumption that every prosecution for a crime is founded upon probable cause and is instituted for the purpose of justice.”
 
 Id.
 
 Moreover, “acting on the advise of counsel can be an absolute defense in an action for malicious prosecution.”
 
 Id.
 
 412 S.E.2d at 775.
 

 With respect to the advice of counsel defense, the West Virginia Supreme Court of Appeals has stated that “A suit, action or proceeding, prosecuted in good faith, and on advice of reputable counsel obtained after a fair and accurate disclosure to counsel of the facts on which advice is sought, may not serve as the basis of an action for malicious prosecution.”
 
 Hunter v. Beckley Newspapers Corp.,
 
 Syl.Pt. 5, 129 W.Va. 302, 40 S.E.2d 332 (1946). Thus, the defense is applicable where the evidence discloses that the attorney consulted had the benefit of all pertinent information, believed it sufficient to support the prosecution, and defendant acted in reliance on counsel’s advice.
 
 Truman v. Fidelity & Casualty Co. of N.Y.,
 
 146 W.Va. 707, 123 S.E.2d 59, 70-71 (1961). The defense operates regardless of whether the advice was obtained from private counsel or a public prosecutor.
 
 See id.
 
 123 S.E.2d at 71.
 

 As discussed,
 
 supra,
 
 pages-- -, the decision to seek an indictment on the escape charge was made by prosecutor Welch on the basis of a complete investigative report that not only contained the information implicating Michael Rhodes but the inconsistent statements of Craft, some of which, if believed, would be deemed exculpatory.' Similarly, the decision to seek an indictment on the contraband charges and thereafter to proceed to trial on those charges was made by prosecutor Morgan on
 
 *1281
 
 the basis of a full investigative report that contained statements supporting the allegations that on three separate occasions Michael Rhodes was involved in allowing alcohol into the jail for the consumption of inmates.
 

 Police officers Smithers, Eads and Skeen having fully advised prosecutor Welch of the results of their escape investigation, the defense of advice of counsel entitles them to summary judgment in their favor on plaintiffs’ claim of malicious prosecution of the escape charge. Officer Eads having fully advised prosecutor Morgan of the results of his investigation of the contraband charges, he is likewise entitled to summary judgment in his favor on plaintiffs’ claim of malicious prosecution of the contraband charges.
 

 6.
 
 Count V and Count VI Intentional Infliction of Emotional Distress.
 

 One of the elements of a claim of intentional infliction of emotional distress, sometimes called the tort of outrage, is a showing that “the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality.”
 
 Harless v. First Nat’l Bank in Fairmont,
 
 169 W.Va. 673, 289 S.E.2d 692, Syl.Pt. 6 (1982). The conduct must be “so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.”
 
 Keyes v. Keyes,
 
 182 W.Va. 802, 392 S.E.2d 693, 696 (1990) (quoting
 
 Restatement (Second) of Torts
 
 § 46 cmt. d (1965)). It is for the court, in the first instance, to determine “whether the defendant’s conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.”
 
 Restatement,
 
 § 46 cmt. h.
 

 Having concluded that the conduct of the defendant police officers did not rise to the level of supporting a section 1983 or common law action for malicious prosecution, the court finds as a matter of law that their conduct in participating in the prosecution of Michael Rhodes, if wrongful in any manner, was not so extreme as to support a claim for the intentional infliction of emotional distress on behalf of either plaintiff.
 
 See Hines v. Hills Dept. Stores, Inc.,
 
 193 W.Va. 91, 454 S.E.2d 385, 390-92 (1994) (a finding for defendant on a malicious prosecution claim negates a claim for outrageous conduct inasmuch as the showings necessary to support “a malicious prosecution case are less severe than an action for outrageous conduct”).
 

 III.
 
 Conclusion.
 

 For the reasons stated, it is ORDERED that summary judgment be entered in favor of the defendants Carl R. Smithers, Huston M. Eads, David W. Skeen, Robin K. Welch and Tony Morgan, on all of the claims of plaintiffs Michael Eugene Rhodes and Danita Rhodes.
 

 The Clerk is directed to forward copies of this order to all counsel of record.
 

 [1]
 

 . The October 1994 motions are directed toward the allegations set forth in plaintiffs' first amended complaint, while the January 1995 supplemental motions address the additional claims set forth in the second amended complaint as allowed by order entered on January 10, 1995.
 

 [2]
 

 .
 
 W.Va.Code § 61-5-9 makes it a felony for a “jailer or other officer” to "aid or voluntarily suffer a prisoner convicted or charged with felony to escape from his custody.”
 

 [3]
 

 . Under W.Va.Code § 61-5-8 it is a felony to transport alcoholic liquor onto the grounds of a jail, § 61-5-8(c), or to deliver alcoholic liquor to a jail inmate, § 61-5-8(d).
 

 [4]
 

 . As will be seen, however, they may be entitled to qualified immunity for those same acts.
 
 Buckley,
 
 509 U.S. at 273-77 nn. 6 & 7, 113 S.Ct. at 2616-17 nn. 6 & 7;
 
 Carter,
 
 34 F.3d at 262.
 

 [5]
 

 . Welch avers, (Welch Aff, ¶ 11), and plaintiffs do not contend otherwise, that during the questioning of Ms. Drennen and Ms. Shaffer, no inquiry was made as to Michael Rhodes.
 

 [6]
 

 . Plaintiffs also argue that Michael Rhodes was subjected to arrests without probable cause because the officers failed to conduct reasonable investigations of the escape and contraband matters. Thus, they rely considerably on case law outlining the investigative duties of an officer prior to making an arrest. In that regard, probable cause for arrest under the Fourth Amendment "exists where the facts and circumstances within [the officer’s] knowledge and of which [he] had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.”
 
 Clipper v. Takoma Park, Md.,
 
 876 F.2d 17, 19 (4th Cir.1989) (quoting
 
 Dunaway v. New York,
 
 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979)).
 

 Here, Michael Rhodes was not in any sense arrested until after the officers conducted investigations, prepared reports of the investigations, turned the reports over to prosecutors, who made the decision to present the results of the-investigations to grand juries, and the grand juries returned their indictments. The court accordingly deems it more appropriate to view the qualified immunity defense in the context of developed case law discussing § 1983 actions based on claims of prosecution without probable cause and does not focus on the authorities addressing arrest without probable cause.
 

 [7]
 

 . As the United States Supreme Court recently noted, although "[m]ost lower courts recognize some form of malicious prosecution action under § 1983,” there is considerable divergence between the circuits on whether the § 1983 action coincides with the common law tort of malicious prosecution or instead requires deprivation of a constitutional magnitude.
 
 Albright v. Oliver,
 
 510 U.S. 266, 270-71 n. 4, 114 S.Ct. 807, 811 n. 4, 127 L.Ed.2d 114 (1994). A difference of opinion also existed as to whether a § 1983 malicious prosecution claim was to be evaluated as either a procedural or substantive due process deprivation or a deprivation of liberty interest under the Fourth Amendment.
 
 See id.
 
 In
 
 Albright,
 
 the Court determined that to the extent that a malicious prosecution claim is actionable under § 1983, it is to be evaluated under the liberty interests protected by the Fourth Amendment.
 

 [8]
 

 . The record before the court does not show Skeen’s presence at any of the Craft interviews and it was the Garrett report, not the Michael Rhodes report, that referenced Craft’s confession, his polygraph examination results, and the inconsistencies in his statements.